THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. C. A. FRONK, as Administrator, etc.

No. 14,547.   (87 Pac. 698.)

SYLLABUS BY THE COURT.

1. RAILROADS—Student Brakeman Held to be an Employee. A student brakeman, who, in consideration of being permitted to ride on a railway company's freight-train to observe and learn the duties of a freight brakeman, agrees to perform service on its engines, trains and cars while learning such duties, is an employee of the company.

2. CONTRACTS—Release from Liability for Negligence—Void as Against Public Policy. Under the statutes of this state a contract entered into by such employee exempting the company from all liability for damages which he may sustain in consequence of the negligence of the company, its agents, servants, or employees, is against public policy and void.

Error from Stafford district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed November 10, 1906. Affirmed.

William R. Smith, A. A. Hurd, O. J. Wood, and Alfred A. Scott, for plaintiff in error.

D. A. Banta, and T. W. Moseley, for defendant in error.

The opinion of the court was delivered by

GREENE, J.: This action was commenced by C. A. Fronk, as administrator of the estate of Elmer Tindall, deceased, to recover damages for the death of Tindall, alleged to have been occasioned by the negligence of the servants and employees of the defendant, the Atchison, Topeka & Santa Fe Railway Company.

It was alleged in the petition that at the time Elmer Tindall received the injuries from which he died he was in the service of the defendant as a student brakeman on a freight-train; and that through the negligence of the agents, servants and employees of the defendant company there was a collision between another freight-train and the one upon which Elmer Tindall was riding, causing his death.

In avoidance of its liability the defendant pleaded the following contract between it and Elmer Tindall, entered into before it admitted him upon its trains as a student brakeman, and alleged that it was under the terms and conditions of this contract that Tindall was upon its train when he was killed:

"APPLICATION TO LEARN WORK OF FREIGHT BRAKEMAN OR FIREMAN, AND RELEASE.

"Whereas, I, the undersigned, Elmer Tindall, residing at Hoisington, in the state of Kansas, and being twenty-five years of age, desiring to learn the work necessary to fit myself for the occupation of a brakeman on freight-trains, have applied to the Atchison, Topeka & Santa Fe Railway Company for an opportunity of learning said work, and to that end have requested the privilege of working on and about the locomotives, trains and cars of said railway company without expectation or promise of receiving wages or any pay whatever for work so done during such time, and without being considered as an employee of said company during said time; and

"Whereas, the railway company is willing to grant me the privilege above applied for on the representation and statement above made, but on account of the dangers to which I may be exposed also requires that

Railway Co. v. Fronk.

the railway company, its officers and agents, shall be relieved from all liability for damage, injury or death sustained by me while so working, or while riding, walking or standing on or about such locomotives, trains or cars, or while on or about the property or premises of the railway company;

"Now, therefore, in consideration of said company granting me the privileges hereinbefore mentioned, I do hereby agree to and do hereby assume all dangers of such work and risks of injuries which may be sustained by me in or about such work, whether the same may be caused by or arise from the negligence of the railway company or of the officers, agents or servants thereof, or otherwise, or which I may receive from any cause whatever during the term of my connection with said company in learning the work aforesaid; and I hereby release and forever discharge said Atchison, Topeka & Santa Fe company, and the officers and agents thereof, from any and all claims, demands, suits or liabilities of any kind for death or for any injury that I may sustain, whether the same may be caused by or arise from the negligence of the said railway company, or of the officers, agents or employees thereof, or otherwise, during the term of my connection with said company in learning the work aforesaid, while upon or about such locomotives, trains or cars, or while walking or standing on or about the same, or while on or about any such property or the premises of said railway company; and I further agree that I will not claim any wages or compensation for any work that I may do during such time, nor claim to be in the employ of said company nor an employee thereof during such time.

"Witness my hand and seal, at Dodge City, state of Kansas, this 4th day of August, 1904.

[SEAL.]                                    ELMER TINDALL.

"Signed in presence of H. C. Duncan, witness."

To this defense the plaintiff demurred, the demurrer was sustained, and the defendant brings the cause here for review.

The relation of the parties at the time Elmer Tindall was killed is one of the controlling questions in this controversy. The plaintiff in error contends that by the contract under which Tindall was permitted to

go and remain on its trains he was a mere licensee for his own personal benefit, and by the contract had expressly waived any claim for damages resulting to him in consequence of the negligence of the company's agents, servants or employees. In determining the relation of parties courts are not bound by the agreements of the parties as to what such relations shall be or as to the legal effect of the terms of the contract. Notwithstanding such agreements, whenever the question is properly presented courts will analyze the elemental facts of the agreement and determine therefrom the actual relations of the parties.

In *Railway v. Ivy*, 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758, which was an action for damages for a personal injury sustained by one who was shipping cattle under an agreement, indorsed on the back of the shipping contract, that the shipper was an employee of the railway company, it was said:

"By the agreement indorsed on the back of the contract he agrees that he is the employee of the company, but that is evidently a fiction to provide for the release of the company from damages for personal injuries occasioned by the negligence of its servants. It is a pretense, a subterfuge, upon which to predicate the discharge of the company for damages in a plausible form. The true relations of the parties cannot be changed by such an agreement. It states a fact which is untrue; the agreement that it is true does not make it so. It amounts to this: Knowing that a contract would be of doubtful validity that absolved the company or limited its liability as a common carrier of passengers, the contract was devised in which the passenger acknowledges himself to be an employee of the company, so as to contract for its limited liability upon such relation, and give it the semblance of legality. If the liability of a common carrier cannot be limited in express terms, and by a direct agreement, it cannot be done upon false or counterfeited relations." (Page 413.)

Persons capable of contracting are at liberty, *inter partes*, to make any contract that may to them seem

advantageous, provided, however, such contracts do not attempt to transgress the law or contravene public policy.   But in the exercise of their right to contract persons are powerless, by contract or otherwise, to conclude one another by agreeing to place upon the terms of their agreements a legal construction different from that which the law places upon them, or a construction prohibited by public policy.   Going beyond the mere conclusions stated in the contract and analyzing the facts as they appear from the contract itself, for the purpose of determining the actual relations of the parties at the time Tindall was killed, the conclusion is irresistible that he was in the service of the railway company, and, as between him and the company, while in the discharge of duties assigned to him, was entitled to protection from the negligence of the company's servants.

The contract is adroitly drawn.   Its apparent purpose is to relieve the company from liability to Tindall for injuries sustained while working for the company in consequence of the negligence of the company's agents, servants or employees.   In expressing the duties to be performed by Tindall the language is permissive only, but the services which the agreement contemplates that Tindall should perform for the company are sufficient to justify the conclusion that while performing such services he was an employee of the company.   The railway company was not conducting a free school for the education of freight brakemen, nor was Tindall riding gratuitously on the defendant's train at the time he was killed, but was working for the company, assisting in the operation of the train. Notwithstanding the agreement to the contrary, the elemental facts created the relation of master and servant.   The compensation of the company for the privileges granted to Tindall was the work to be performed by him as freight brakeman.

In California a railroad company is not liable for injuries to an employee in consequence of the negli-

gence of a coemployee, and in *Weisser v. Southern Pacific Ry. Co.*, 148 Cal. 426, 83 Pac. 439, the relation of a railroad company to a student brakeman who was working for the purpose of qualifying himself for a brakeman, and for no other consideration, was considered. It was urged by the railroad company that the brakeman was an employee. The court said that it was unnecessary in disposing of the appeal to determine the relation of the parties, but it "has been discussed by counsel, and its determination may be necessary for the purposes of a new trial" (page 429), and proceeded to pass upon the question, using the following language:

"As such 'student brakeman' he was entirely subject to the orders of defendant, and was required to perform such ordinary duties of brakeman as were allotted to him, just as fully as if he had been assigned regular employment for a pecuniary compensation by defendant. It is difficult to conceive of any reason why one situated as these circumstances show plaintiff to have been should be held to be other than an employee of the defendant, subject to all the obligations imposed by that relation. He was certainly in the service of defendant, regularly engaged in the doing of the defendant's business. The simple fact that he was not to be paid any money for his services cannot affect the question. It was perfectly competent for him to agree to serve an apprenticeship without pecuniary consideration. The important thing is that he voluntarily entered and was engaged in the service of the defendant upon such terms as he had seen fit to agree to. While so engaged in such service there was no distinction material to the question under discussion between his situation and that of the other employees on the train." (Page 430.)

A similar question was before the federal court in *Huntzicker v. Illinois Cent. R. Co.*, 129 Fed. 548, 64 C. C. A. 78, where a young man wishing employment as flagman, upon applying to the railroad company for such position, was informed that he had not had sufficient experience. He then applied for, and was granted, permission to go upon the trains of the com-

Railway Co. v. Fronk.

pany and by observation and experience learn what the duties of a flagman were. While so engaged, and upon his own application, he was ordered to appear at the trainmaster's office to be reexamined as to his proficiency. While riding upon a train to the trainmaster's office for such purpose a collision occurred and he was killed. In determining the relation of the parties the court said:

"As there was no controversy over the facts, the question became one of law, and the court performed a duty of its own in deciding it. The agreement between the parties, reduced to its elements, was that the defendant was to furnish the plaintiff the facilities for qualifying himself for the duties of a flagman; that is to say, it was to give him instruction and transportation over its road; not such transportation as is due to a passenger, but such as is ordinarily incident to the operation of freight-trains by men in that service. In consideration of this, Fereday was to perform such elementary and simple service as he was capable of under the direction of the conductors of trains. . . . Applying the controlling principles which we have indicated to the present case, it seems clear that Fereday at the time of his death was a servant of the defendant. He was enjoying the privilege for which he served. He was under the control of the defendant, and the company would undoubtedly have been responsible for the manner in which he performed his service; and, what is more important, under the test above stated he had no interest whatever, other than that which any servant has in the result of his service, in the consequences of the discharge of his duties. We are therefore of opinion that the court did not err in its direction to the jury." (Pages 549, 551.)

In the cases cited there was no contract attempting to determine the relation of the parties. The law, however, determines that question, and it must be held in this case that the relation was that of master and servant.

It is also contended that the waiver by the deceased of any claim for damages for injuries in consequence of the negligence of the company, its employees, agents,

or servants, is a complete defense in this action. With this we do not agree. Our statute provides:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage." (Gen. Stat. 1901, § 5858.)

The state has an interest in the lives, health and safety of its citizens, and whenever a business, although lawful in itself, is dangerous to the lives or injurious to the health of the employees engaged in conducting such business it becomes a question of public concern and the state may intervene in the interest of the public welfare. We have many such statutes enacted in the interest and for the protection of different classes of citizens. The owner or lessee of coal-mines worked by means of shafts is required to maintain escapement and ventilating shafts in accordance with certain prescribed rules, and no person is permitted to take more than five pounds of powder in any such mine at one time. The protection thus provided by the state for the safety of its citizens is a matter of public concern and cannot be contracted away by the individual. In many other states we find instances where the state has intervened for the protection of its citizens who are engaged in business hazardous to health. In Utah a statute was enacted prohibiting a certain class of miners from laboring more than eight hours in each twenty-four. A contract was made between an employer and one of his employees that the employee should work twelve hours in each twenty-four. An action was brought by the employee to recover for the time so worked over the eight hours. In passing on the question, in *Short v. Mining Co.*, 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603, the court said:

"We are further of the opinion that the right to waive this legislative protection is without the power of the employee. This law is in the nature of a state

police regulation. Its object is the good of the public as well as of the individual. The state in this matter has intervened in its own behalf. This protection to the state cannot at will be waived by any individual, an integral part thereof. The fact that the individual is willing to waive his protection cannot avail, the public good is entitled to protection and consideration, and if in order to effectuate that object there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good." (Page 25.)

A similar question arose in Rhode Island, in *Opinion to the Governor*, 24 R. I. 603, 54 Atl. 602, 61 L. R. A. 612, relating to the ten-hour law for street-railway corporations. The question arose under a law limiting the hours of the labor of an employee on a street-car. Two questions were submitted by the governor to the judges of the supreme court: (1) Is the law constitutional? (2) If constitutional, can it be waived by contract? The first was answered in the affirmative, and on the second question it was held that the purpose of the law was to limit the continuous service of such employees in the interest of public safety, and that public safety cannot be made to depend on private contract. In considering a similar question in *Holden v. Hardy*, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, the court said:

"But the fact that both parties are of full age and competent to contract does not necessarily deprive the state of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. 'The state still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and when the individual health, safety and welfare are sacrificed or neglected, the state must suffer.'" (Page 397.)

For the reasons suggested, a contract by one entering the service of a railroad company waiving his right of action for damages which he may receive in

consequence of the negligence of its agents, servants or employees is void.

The judgment of the trial court is affirmed, and the cause is remanded with instructions to proceed in accordance with the views herein expressed.

JOHNSTON, C. J., MASON, SMITH, PORTER, GRAVES, JJ., concurring.

BURCH, J. (dissenting) : I am not satisfied the parties to the contract in question were prohibited from making it, and therefore dissent.