BLUST v. SISTERS OF MERCY.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—APPLICABILITY.

   Workmen's compensation act, to be applicable to given case, requires relation of employer and employee under contract of hire.

2. SAME—NOVITIATE IN SISTERS OF MERCY NOT EMPLOYEE.

   A novitiate in the Sisters of Mercy, a Roman Catholic charitable organization, who had devoted her life to charitable purposes without hope of pecuniary reward, is not an employee of the order within the meaning of the workmen's compensation act, and therefore is not entitled to compensation for injuries received while working in the order's laundry; there being no contract of hire.

   BUTZEL, C. J., and POTTER, J., dissenting.

Appeal from Department of Labor and Industry. Submitted June 4, 1931. (Docket No. 80, Calendar No. 35,744.) Decided December 8, 1931.

Loretta Cecelia Blust presented her claim against Sisters of Mercy, employer, and Hartford Accident & Indemnity Company, insurer, for accidental injuries received while in defendant's employ. Compensation denied. Plaintiff appeals. Affirmed.

*Shields, Silsbee, Ballard & Jennings,* for plaintiff.

*Amos F. Paley,* for defendants.

POTTER, J. (*dissenting*). Plaintiff presented a claim for compensation against the Sisters of Mercy,

---

* Continued from Vol. 255.

As to who are "employees" within the meaning of the compensation statutes, see annotation in L. R. A. 1916A, 115, 246; L. R. A. 1917D, 145; L. R. A. 1918F, 201.

Grand Rapids, Michigan, and the Hartford Accident & Indemnity Company. From an order denying compensation she appeals. August 26, 1927, plaintiff made application to become a member of the Sisters of Mercy, of Mt. Mercy College and Academy, at Grand Rapids, Michigan. She was tentatively accepted and began a probationary period, divided into three stages: postulate stage; novitiate. stage; and white sister stage. From August 26, 1927, to April 24, 1928, petitioner was a postulate, and from April 24, 1928, to April 24, 1930, a novitiate. The period which prospective members must spend in the various stages is arbitrary. Applicants are never finally accepted on application. There is a six-month period during which they remain postulate and a two-year period during which they remain novitiate. This is followed by a three-year period between the time they take their first and preliminary vow upon graduating from the novitiate stage until they take their final vows and become sisters in the order. When the applicant is a postulate or a novitiate, she is on probation. During the period when applicant is a novice she has the privilege of withdrawing from the order and the order has the privilege of refusing to accept her into membership. November 16, 1929, while plaintiff was a novitiate, she was engaged in domestic work of the Mt. Mercy Academy, and while cleaning the drum of a mangle in the laundry she got both hands in the mangle, her arms were pulled in and she was injured. She was taken to St. Mary's hospital, an institution controlled by the Sisters of Mercy in Grand Rapids, but entirely separate from Mt. Mercy Academy, where she remained until February 14, 1930. Following her discharge from the hospital, she suffered total disability until September 5, 1930. After plaintiff's

injury, defendant Sisters of Mercy filed a report of a compensable accident.

Mt. Mercy Academy is a normal training school, approved by the State, complying with the statutes requiring normal training of all teachers who teach in the public or parochial schools of the State. Plaintiff had a high school education before applying for admission to the order, and, at the time of her injury, was taking the normal training course to fit herself for teaching, expecting to become a teacher qualified to teach in the Catholic parochial schools of the State.

The necessary clothing and money to defray the expense of reception into the order had been furnished. Plaintiff performed, in the kitchen, laundry, chapel and halls of the institution, services classified as menial at common law under direction of the Sisters of Mercy, and was supplied by them with the necessities of food, clothing, shelter, and medical attention. At the time of her injury plaintiff's legal status was not different than that of any one else who is given food, clothing, shelter, and an opportunity to attend school in consideration for services rendered. The defendant Sisters of Mercy is an order of the Roman Catholic Church. They accepted the provisions of the workmen's compensation law (2 Comp. Laws 1929, § 8407 *et seq.*), May 2, 1929, and took out a workmen's compensation insurance policy in defendant Hartford Accident & Indemnity Company. The matter came on for hearing before a deputy commissioner at Grand Rapids, February 5, 1931, who, after hearing the testimony, entered an award in favor of petitioner, granting her compensation in the sum of $9.10 a week for a period of 41 weeks and 5 days, being from November 16, 1929, to September 5, 1930, and also the sum of $1,601.75 for

medical, hospital, and nursing expenses incurred within the 90-day period following the accidental injury. The defendant Hartford Accident & Indemnity Company appealed from the award of the deputy commissioner to the department of labor and industry, and, upon final hearing, the award of the deputy commissioner was reversed and plaintiff denied compensation on the ground the relationship of employer and employee did not exist between defendant Sisters of Mercy and plaintiff.

It is contended by the insurance company the allowance and payment of plaintiff's claim would be sacrilegious. Not having raised this question when the premium money was coming in, it ought not to urge it when the money is going out. There was ample evidence to sustain the award of the deputy commissioner, if plaintiff was an employee.

The sole question involved is whether the plaintiff was an employee, within the meaning of the compensation law, of the Sisters of Mercy, November 16, 1929, the date of the accident. If so, she has a right to compensation; if not, she has no right to recover.

Section 7, part 1, of the compensation act (2 Comp. Laws 1929, § 8413) provides:

"The term 'employe' as used in this act shall be construed to mean * * * every person in the service of another, under any contract of hire, express or implied."

Defendant contends that under the compensation law an injury to be compensable must arise out of and in the course of an employment (*Van Sweden* v. *Van Sweden,* 250 Mich. 238), which requires the relation of employer and employee, and necessarily involves a contract, and that the only basis of the relation of employer and employee is a contract of

hire, express or implied. *Ganga* v. *Ford Motor Co.,* 250 Mich. 247.

In *Atchison, Topeka & Santa Fe R. Co.* v. *Fronk,* 74 Kan. 519 (87 Pac. 698, 11 Ann. Cas. 174), the question arose whether a student brakeman was a railway employee. Applicant, to learn the business of a railroad brakeman, signed an application as follows:

"Application to Learn Work of Freight Brakeman or Fireman, and Release.

"Whereas, I, the undersigned, Elmer Tindall, residing at Hoisington, in the State of Kansas, and being 25 years of age, desiring to learn the work necessary to fit myself for the occupation of a brakeman on freight trains, have applied to the Atchison, Topeka & Santa Fe Railway Company for an opportunity of learning said work, and to that end have requested the privilege of working on and about the locomotives, trains and cars of said railway company without expectation or promise of receiving wages or any pay whatever for work so done during such time, and without being considered as an employee of said company during said time; and

"Whereas, the railway company is willing to grant me the privilege above applied for on the representation and statement above made, but on account of the dangers to which I may be exposed also requires that the railway company, its officers and agents, shall be relieved from all liability for damage, injury or death sustained by me while so working, or while riding, walking or standing on or about such locomotives, trains or cars, or while on or about the property or premises of the railway company;

"Now, therefore, in consideration of said company granting me the privileges hereinbefore mentioned, I do hereby agree to and do hereby assume all dangers of such work and risks of injuries which may be sustained by me in or about such work,

whether the same may be caused by or arise from the negligence of the railway company or of the officers, agents or servants thereof, or otherwise, or which I may receive from any cause whatever during the term of my connection with said company in learning the work aforesaid; and I hereby release and forever discharge said Atchison, Topeka & Santa Fe company, and the officers and agents thereof, from any and all claims, demands, suits or liabilities of any kind for death or for any injury that I may sustain, whether the same may be caused by or arise from the negligence of the said railway company, or of the officers, agents or employees thereof, or otherwise, during the term of my connection with said company in learning the work aforesaid, while upon or about such locomotives, trains or cars, or while walking or standing on or about the same, or while on or about any such property or the premises of said railway company; and I further agree that I will not claim any wages or compensation for any work that I may do during such time, nor claim to be in the employ of said company nor an employee thereof during such time.

"Witness my hand and seal, at Dodge City, State of Kansas, this 4th day of August, 1904.
     (Seal)  '                          "ELMER TINDALL.
"Signed in presence of H. C. DUNCAN, witness."

The railroad company defended upon the ground this contract was valid and binding and plaintiff was not a railway employee. It is said:

"The contract is adroitly drawn. Its apparent purpose is to relieve the company from liability to Tindall for injuries sustained while working for the company in consequence of the negligence of the company's agents, servants or employees. In expressing the duties to be performed by Tindall the language is permissive only, but the services which the agreement contemplates that Tindall should per-

form for the company are sufficient to justify the conclusion that while performing such services he was an employee of the company. The railway company was not conducting a free school for the education of freight brakemen, nor was Tindall riding gratuitously on the defendant's train at the time he was killed, but was working for the company, assisting in the operation of the train. Notwithstanding the agreement to the contrary, the elemental facts created the relation of master and servant. The compensation of the company for the privileges granted to Tindall was the work to be performed by him as freight brakeman.''

. In *Employers Indemnity Co.* v. *Kelly Coal Co.*, 149 Ky. 712 (149 S. W. 992, 41 L. R. A. [N. S.] 963), it is said:

''Speaking generally, the relation may be said to exist whenever the employer retains the right to' direct not only what shall be done, but how it shall be done. *Robinson* v. *Webb*, 11 Bush (74 Ky.), 464; *Central Coal & Iron Co.* v. *Grider's Adm'r*, 115 Ky. 745, 755 (74 S. W. 1058, 65 L. R. A. 455); *Jahn's Adm'r* v. *W. H. McKnight & Co.*, 117 Ky. 655, 661 (78 S. W. 862). The significant element in the relation of an employee and his employer is personal service.

''In Wood on Master and Servant, § 317, it is said:

'' 'The real test by which to determine whether a person is acting as a servant of another is, to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct.'

''In other words, an 'employee' is one who works for and under the control of his employer. The mode of payment is a circumstance in solving the question whether the relation of master and servant exists, but it is not decisive of that question.''

In *Commonwealth* v. *Griffith,* 204 Mass. 18 (90 N. E. 394, 25 L. R. A. [N. S.] 957, 134 Am. St. Rep. 645), defendant was prosecuted for a violation of the Massachusetts child labor law. The question arose whether the children for whose employment he was prosecuted were employed. It is said:

"Another question is whether the jury could find that the defendant employed these children. Here again, if we go to the lexicographer, we have as a meaning of 'employ,' 'To use as a servant, agent or representative.' These children were engaged in a regular service for the defendant in Boston, for two weeks. He depended upon them to do what was a necessary part of that which he was presenting every evening for the entertainment of theatre-goers. Without them his business could not go on; at least, it could not go on in the way that he desired to have it go. The facts find that he 'procured the boy to appear in the play as aforesaid.' He allowed a compensation for the service of the girl. He gave to the boy an opportunity for valuable training, and for constant companionship with his father, who was an actor in the company. The service was rendered regularly, under an engagement relied on by both parties, for such benefits as might result from it. The payment of compensation, as such, is not a necessary element of employment. If one is procured to work regularly under an engagement, rendering valuable service for a specified time, it may be found that he is employed, although he receives nothing as an agreed compensation. He is used and relied upon to accomplish the purpose of his employer."

In *Mousseau* v. *City of Sioux City,* 113 Iowa, 246 (84 N. W. 1027), the question of the city's liability to pay policemen employed by it arose. It is said:

"From the word 'employ,' as here used, the obligation to pay for the services to be rendered cannot

be implied. According to Webster, the word means 'to use; to have in service; to cause to be engaged in doing something; to have or keep at work; to give employment or occupation to; to intrust with some duty or behest.' It means no more than the council shall intrust these duties to, and require their performance by, certain persons. The idea of hiring, in which a request and agreement to pay is implied, is never included in the meaning of 'employ' save when applied to a servant or hired laborer.''

In *Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268 (140 N. E. 694, 30 A. L. R. 598), claimant served as an interne or junior house physician in defendant hospital. He performed an autopsy and was sewing up the corpse when the needle slipped, puncturing his finger and blood poisoning followed. He made a claim for compensation. He agreed to serve the hospital two years without pay other than board, lodging and hospital uniforms. He performed the usual service of an interne. The question arose as to whether claimant was an employee. It is said:

''Liability in this case is to be determined by the contract, express or implied, between hospital and physician. We think the relation *inter se* is to be characterized as a relation of employment. A distinction is to be drawn for that purpose between the position of a visiting or consulting physician, and that of an interne, who has placed his time and service at the call of a superior. * * * This claimant was under a duty to spend his days and nights at the hospital, and to render any service, administrative or medical, exacted by the hospital through its administrative agents, within the range prescribed by propriety and custom. He was a servant or employee by every test of permanence of duty, of intimacy of contact, and of fulness of subjection.

''The fact that internes in this hospital (unlike those in many others) receive no money for their

services, but only lodging, board and uniforms, does not defeat their right to an award under the statute. * * * The hospital does not carry on its business for pecuniary gain. It elected, however, to insure. The carrier, having accepted its premium, is bound to the same extent as if gain rather than benevolence had inspired its activities."

The Sisters of Mercy had a right to discharge plaintiff and terminate the relations existing between plaintiff and the order at any time. She was subject to their order and control. She was liable to be discharged at any time for misconduct.

In 20 Halsbury's Laws of England, p. 66, it is said:

"If a person has only the right to direct another what work he is to do, the relation is that of principal and agent; but if he has the further right to direct how the work is to be done, the relation is not that of principal and agent, but master and servant."

The insured not only had the right to direct plaintiff what work she was to do but the further right to direct how the work was to be done. We should hold the relation of master and servant existed. The award of the department of labor and industry should be reversed, with costs, and the cause remanded for disposition in accordance with this opinion.

BUTZEL, C. J., concurred with POTTER, J.

WIEST, J. I cannot concur in the opinion of Mr. Justice POTTER.

August 26, 1927, plaintiff joined the Sisters of Mercy, a Roman Catholic charitable organization, as

a probationer, intending to qualify for admission to membership in the sisterhood, and as "dowry" provided herself with clothing and contributed money for "reception expenses." At the expiration of six months she became a "novitiate," wore the habit, and was called "Sister" by members of the order. Her relation as a novitiate was that of free will devotion of efforts and talents to the religious and charitable purposes of the order. She received instruction calculated to qualify her for such service when she should reach full membership, and was provided with suitable care, food, clothing, and shelter, but was to receive no pay, nor was she to be to any expense. The relation was far removed from pecuniary considerations for it contemplated a life in which self should be subordinated to charitable efforts.

November 16, 1929, while about domestic duties of a novitiate, she was injured. The Sisters of Mercy cared for her, met all expenses, as in duty bound to do, and there was no interruption of her relation to the order but a continuation to full membership. The department of labor and industry held there was no relation of employer and employee, under contract of hire, and refused an award of compensation. With that holding I agree.

Notwithstanding the cases cited by my Brother, I think the case at bar one of first impression. I find no analogy between instances of work without pay in industrial and professional pursuits, in order to qualify for work with pay, and an instance of entering a charitable and religious order as a novitiate with intent to qualify for membership and a life devoid of pecuniary purpose. In the one instance there is the relation of master and servant and a semblance of hiring, though without wage, but with commercial

earmarks, while in the other there is no relation of master and servant, no hiring, and no commercialism, but a devotion to charitable purpose without hope of pecuniary reward.

The Sisters of Mercy had employees for hire and elected to come under the workmen's compensation act (2 Comp. Laws 1929, § 8407 *et seq.*) and carried compensation insurance, but members and novitiates were not such, neither did the insurance indemnify the society for the expense of caring for injured members or novitiates. The workmen's compensation act requires the relation of employer and employee under a contract of hire. Plaintiff was not hired at all. It would be unfortunate to hold that the Sisters of Mercy hire persons to submit to training for membership in the sisterhood. The work of the Sisters of Mercy, in the care of indigent and other sick and infirm persons, and in no manner, directly or indirectly, for private profit, constitutes a public charity. The compensation law allows nothing for pain and suffering.

Plaintiff testified that any award made herein would not come to her but would belong to the order, and this by virtue of her relation to the order. Neither at common law nor under the compensation act can plaintiff have remedy against the Sisters of Mercy. It would be a strange situation, indeed, to permit the Sisters of Mercy, one defendant herein, to reimburse itself for expenses incurred in caring for a novitiate, in the manner here attempted. Plaintiff has no interest in any recovery of an award. She recognizes that her interest in an award is only that of the Sisters of Mercy.

If a novitiate is held to be an employee, and the Sisters of Mercy an employer, then what is the con-

tract of hire? It cannot be stated for there is none. The determination of the department of labor and industry is affirmed.

CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred with WIEST, J.