BETTS v ANN ARBOR PUBLIC SCHOOLS

Docket No. 58859. Argued November 3, 1977 (Calendar No. 12).—
Decided November 20, 1978.

Nathaniel J. Betts was an unpaid "student teacher" for the Ann
Arbor Public Schools to fulfill the requirements for his college
degree in physical education and for his teaching certificate.
Betts lost the vision in one eye in horseplay when students
attempted to throw him into a school swimming pool and was
awarded workmen's compensation benefits by the Workmen's
Compensation Appeal Board against the Ann Arbor Public
Schools. The Court of Appeals, R. M. Maher, P.J., and D. C.
Riley and R. M. Ryan, JJ., reversed the award in an unpub-
lished per curiam opinion on the ground that the plaintiff was
not "employed" by the defendant (Docket No. 24358). Plaintiff
appeals. *Held:*

The plaintiff served the defendant as a public "employee" by
appointment, under an implied contract of hire. The language
of the Worker's Disability Compensation Act was intended to
give a broader definition of public "employee" than of "em-
ployee" in the private sector, which includes only persons
serving under a "contract of hire". Those who perform services
gratuitously are generally excluded from the definition of "em-
ployee" but the payment necessary to establish a contract of
hire need not be in money. Employment is a mutual arrange-
ment between the employer and employee under which each
gives up and gains certain things. The relationship of the
plaintiff and defendant in the instant case had the earmarks of
a commercial relationship. The plaintiff was not a volunteer,
nor was the school district required to accept a student teacher.
The defendant accepted the plaintiff's beneficial services (teach-
ing) for which compensation is normally paid or anticipated.
This permitted the plaintiff's supervising teacher to perform

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 81 Am Jur 2d, Workmen's Compensation §§ 154, 184.
[2] 81 Am Jur 2d, Workmen's Compensation §§ 179-185.
[3] 81 Am Jur 2d, Workmen's Compensation § 156.
[5] 81 Am Jur 2d, Workmen's Compensation § 162.
[6] 82 Am Jur 2d, Workmen's Compensation §§ 240-243.

other duties of benefit to the defendant. In return, plaintiff was paid in the form of training, college credit towards graduation, and meeting the prerequisites for a provisional teaching certificate.

Justice Blair Moody, Jr., concurred that the plaintiff served the defendant as an employee under an "appointment". It is therefore unnecessary to reach the question whether he served as an employee under an implied "contract of hire".

Justice Ryan, joined by Justice Coleman, dissented on the ground that to hold that the plaintiff was an employee of the defendant would be to extend the scope of the Worker's Disability Compensation Act beyond that provided by the Legislature and to effectively rewrite the statute. The essential purpose of workmen's compensation legislation is to provide financial protection, in particular partial restoration of lost wages, for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment. The underlying assumption of the act is that the worker is in a gainful occupation at the time of injury. The plaintiff's purpose at the junior high school was to further his education and, collaterally, to fulfill a university requirement for a degree in physical education. The element of consideration for the plaintiff's services was totally lacking between him and the defendant. The benefit of academic credits was awarded by the University of Michigan rather than the defendant, and there was no evidence that the period of student teaching was in any manner a condition precedent to future employment with the defendant. The relationship was no more than an arrangement whereby the defendant accommodated the plaintiff and the university by providing the setting for in-classroom training.

The decision of the Court of Appeals is vacated and the case is remanded to the Workmen's Compensation Bureau for proceedings consistent with the decision of the Workmen's Compensation Appeal Board.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION — SCHOOLS AND SCHOOL DISTRICTS — STUDENT TEACHERS — EMPLOYEE — WORDS AND PHRASES.

A student teacher served a school district as an "employee" within the meaning of the Worker's Disability Compensation Act where the student teacher was not a volunteer, nor was the school district required to accept a student teacher, the school district accepted the student teacher's services for which compensation is normally paid or anticipated, thus permitting the

supervising teacher to perform other duties for the school, and the student teacher was paid in the form of training, college credit towards graduation, and meeting the prerequisites for a provisional teaching certificate (MCL 418.161[1][a]; MSA 17.237[161][1][a]).

2. WORKMEN'S COMPENSATION — PUBLIC EMPLOYEE — PRIVATE EMPLOYEE — WORDS AND PHRASES.

The definition of a public "employee" under the Worker's Disability Compensation Act was meant to be broader than the definition of "employee" in the private sector (MCL 418.161[1]; MSA 17.237[161][1]).

3. WORKMEN'S COMPENSATION — EMPLOYEE — WORDS AND PHRASES.

Those who perform services gratuitously are generally excluded from the definition of "employee" under the Worker's Disability Compensation Act, but the payment necessary to establish a contract of hire need not be in money; employment is a mutual arrangement between the employer and employee under which each gives up and gains certain things (MCL 418.161[1]; MSA 17.237[161][1]).

CONCURRING OPINION BY BLAIR MOODY, JR., J.

4. WORKMEN'S COMPENSATION — SCHOOLS AND SCHOOL DISTRICTS — STUDENT TEACHERS — EMPLOYEES — APPOINTMENT.

*Determination that a workmen's compensation claimant, a student teacher, served a school district as an employee under an "appointment" within the meaning of the statute makes it unnecessary to reach the question whether the student teacher served as an employee under an implied "contract of hire" (MCL 418.161[1][a]; MSA 17.237[161][1][a]).*

DISSENTING OPINION BY RYAN, J.

5. WORKMEN'S COMPENSATION — SCHOOLS AND SCHOOL DISTRICTS — STUDENT TEACHERS — EMPLOYEE — WORDS AND PHRASES.

*A student teacher engaged in practice teaching at a public school was not an employee of the school district under the Worker's Disability Compensation Act where the element of consideration for the student teacher's services was totally lacking between him and the school district; the evidence disclosed that the student teacher did not expect to receive any monetary compensation, the benefit of academic credits was awarded by his university rather than the school district, and there was no evidence that the period of student teaching was in any man-*

*ner a condition precedent to future employment with the school district; the relationship was no more than an arrangement whereby the defendant accommodated the student teacher and the university by providing the setting for in-classroom training (MCL 418.161[1]; MSA 17.237[161][1]).*

6. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION.

*The underlying assumption of the Worker's Disability Compensation Act is that the worker is in a gainful occupation at the time of injury and that financial protection, in particular partial restoration of lost wages, should be provided for those workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment; extension by the courts of the act's coverage to a plaintiff who is not in a gainful occupation at the time of injury is improper because it effectively rewrites the statute (MCL 418.161; MSA 17.237[161]).*

*Zussman, Doctoroff & Wartell (Ronald D. Feldman,* of counsel) for plaintiff.

*Lacey & Jones* (by *John L. Salter)* for defendant.

Amicus Curiae:

*Miller, Canfield, Paddock & Stone* (by *James E. Tobin* and *Gillian Steinhauer)* for Michigan Association of School Boards.

FITZGERALD, J. In 1971 plaintiff Betts was a student majoring in physical education at the University of Michigan. One of the requirements for his degree was that he train under the supervision of a certified teacher for a short period commonly referred to as "student teaching", or "practice teaching". Betts student-taught at a junior high school in the Ann Arbor public school system from January to April, 1971. Plaintiff conducted two physical education classes each school-day

morning during his four-month student-teaching period. At the time plaintiff was with a class, his supervising teacher, the head of the physical education department, graded papers and did other work around the school.

Plaintiff filed a worker's compensation claim arising from an injury which occurred on his last day of student teaching, April 29, 1971. He described the event in a hearing before the Workmen's Compensation Bureau:

"It was the end of a class period. It was my last class. I was taking absentees and getting them ready to send up to the office. I was still in the gym and went into the locker room, and as I walked in, about 30 of my students grabbed me, and I guess it was traditional, you know, to throw a teacher in the pool. I didn't really feel like going in that morning and I tried to put up a fight, but I didn't succeed and they pulled me in. As I was going into the pool, one of them must have grabbed the whistle that was on the elastic band and it hit me in the eye."

Betts lost his left eye as a result of the incident.

The Workmen's Compensation Appeal Board (WCAB) awarded Betts benefits. The Court of Appeals reversed, finding plaintiff not to be an employee of the Ann Arbor Public Schools at the time of his injury. We granted leave to appeal to consider whether, under Michigan's Worker's Disability Compensation Act, 1969 PA 317, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* a student teacher is an employee of the school district in which he seeks to fulfill his student teaching requirement.

Whether or not Betts was an employee of the school district is governed by MCL 418.161(1)(a);

MSA 17.237(161)(1)(a). A public "employee"[1] is defined as:

"Every person in the service of the state or of any county, city, township, village or school district, *under any appointment, or contract of hire,* express or implied, oral or wrttien." (Emphasis supplied.)

The WCAB controlling opinion says that Betts served the Ann Arbor Public Schools under an appointment. We agree with the board's construction of MCL 418.161(1)(a); MSA 17.237(161)(1)(a):[2]

"Thus, a person in the service of a school district meets the definition of employee if he is (a) under any appointment, express or implied, oral or written or (b) under any contract of hire, express or implied, oral or written. By setting off 'or contract of hire' with commas, it is clear that the Legislature intended 'of hire' to modify only 'contract.' Moreover, MCLA 418.151 [MSA 17.237(151)] which defines employer is more restrictive in its definition of a private employer than it is of a public employer. Reading the difference in definition of an employee of a public employer and the definition of an employee of a private employer in conjunction with the differing definitions of employer in MCLA 418.151, one can draw but one conclusion, that the definition of public employee was meant to be broader than the definition of employee in the private sector.

"Unless the context of the statute suggests otherwise, words in a statute are to be given their plain meaning.

---

[1] A non-public employee is defined more narrowly to include only one serving under a contract of hire:

"Every person in the service of another, under any contract of hire, express or implied, including aliens, * * *" MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

[2] The question of what constitutes an appointment such that one will be considered a public employee for workmen's compensation purposes is apparently a question of first impression in this state. Because the issue was not extensively briefed or argued, we do not here define the precise parameters of the term "appointment".

*Hammons v Franzblau,* 331 Mich 572, 574 [50 NW2d 161] (1951). *Webster's Third New International Dictionary* defines appointment as a 'designation of a person to hold a nonelective office or perform a function.' Thus a person in defendant's service who has been designed *[sic]* to hold a nonelective office or who has been designated to perform a function of defendant is an employee within the meaning of MCLA 418.161(1)(a)."

The WCAB majority's decision that Betts was an employee of the Ann Arbor Public Schools rested primarily on its finding that Betts served under an implied contract of hire. Again, we find the board correct.

Both plaintiff and defendant cite *Blust v Sisters of Mercy,* 256 Mich 1; 239 NW 401 (1931), as authority for their arguments on whether or not a contract of hire existed here.

Blust, a novice with the Sisters of Mercy at Mt. Mercy Academy in Grand Rapids, was training to become a teacher in the Catholic schools. She also performed menial services for the order; the order provided her with food, clothing, shelter and medical care. Blust was injured while working in the order's laundry.

This Court affirmed the Department of Labor and Industry's determination that Blust was not an employee of the Sisters of Mercy for workmen's compensation purposes. Defendant reads *Blust* as authority for the proposition that one in teacher training is not an employee. We agree with plaintiff and the WCAB that *Blust* does not stand for that proposition.

The majority in *Blust* rested its decision, in large part, on the fact that the order, as a charitable organization without pecuniary purpose, was not analogous to a commercial enterprise. Hence, those training for charitable work have a different

status than those who train to qualify for work with pay. Justice WIEST wrote in *Blust,* pp 11-12:

"I find no analogy between instances of work without pay in industrial and professional pursuits, in order to qualify for work with pay, and an instance of entering a charitable and religious order as a novitiate with intent to qualify for membership and a life devoid of pecuniary purpose. In the one instance there is the relation of master and servant and a semblance of hiring, though without wage, but with commercial earmarks, while in the other there is no relation of master and servant, no hiring, and no commercialism, but a devotion to charitable purpose without hope of pecuniary reward."

Justice WIEST further noted that the Sisters of Mercy did have employees working under contracts of hire. The order carried compensation insurance for those employees, but members and novices were not covered by that insurance. Additionally, the novice's relationship to the order was such that any compensation award would belong to the Sisters of Mercy rather than Blust herself. Thus "[i]t would be a strange situation, indeed, to permit the Sisters of Mercy, one defendant herein, to reimburse itself for expenses incurred in caring for a novitiate, in the manner here attempted". *Blust, supra,* p 12.[3] Finally, the majority was not able to find a contract of hire.[4]

While Blust's relationship with the Sisters of Mercy was a religious and charitable affiliation,

---

[3] Cases in other jurisdictions have held a nun to be an employee of her order. See *Sister Odelia v Church of St Andrew,* 195 Minn 357; 263 NW 111 (1935), and *Sister Mary Benedict v St Mary's Corp,* 255 Iowa 847; 124 NW2d 548 (1963).

[4] The applicable section of the former Workmen's Compensation Act did not include persons serving under an appointment:

"The term 'employee' as used in this act shall be construed to mean * * * [e]very person in the service of another, under any contract of hire, express or implied." 1929 CL 8413.

Betts' relationship with the Ann Arbor Public Schools had the earmarks of a commercial relationship. Betts was not a volunteer, nor was the school district required to accept a student teacher. Those who perform services gratuitously are generally excluded from the definition of "employee",[5] but the payment necessary to establish a contract of hire need not be in money. As Larson[6] explains, "Compensation law * * * is a mutual arrangement between the employer and employee under which both give up and gain certain things."

We agree with the WCAB majority's finding of such an arrangement in the instant case.

"I find that an implied contract of hire did, in fact, exist between plaintiff and defendant. Defendant accepted plaintiff's beneficial services (teaching) for which compensation is normally paid or anticipated. This permitted Mr. Armstrong [plaintiff's supervising teacher] to perform other duties of benefit to defendant. In return, plaintiff was paid in the form of training, college credits towards graduation, and the meeting of the prerequisites for a state provisional certificate.

*    *    *

"Plaintiff, herein, is * * * an integral cog in defendant's business of education. His teaching was part of the larger task of educating the young people of Ann Arbor. The fact that the pay for this service was not in the coin of the realm but was in the form of training and qualification for a professional goal does not disqualify plaintiff from the designation of employee. He was helping to furnish the product of education. Should he now be asked to bear the cost of the injury incurred in the process of education or should the cost be borne by the taxpayers of the Ann Arbor School System? I vote for the latter."

[5] See 1B Larson, Workmen's Compensation Law, § 47.41.
[6] *Ibid.*, § 47.10.

The Court of Appeals decision is vacated. The case is remanded to the Workmen's Compensation Bureau for proceedings consistent with the opinion of the WCAB.

Kavanagh, C.J., and Williams and Levin, JJ., concurred with Fitzgerald, J.

Blair Moody, Jr., J. *(concurring)*. I concur with Justice Fitzgerald that the plaintiff Betts served the Ann Arbor Public Schools as an employee under an "appointment". MCL 418.161(1)(a); MSA 17.237(161)(1)(a). It is unnecessary, therefore, to reach the question whether Betts served the school district as an employee under an implied "contract of hire".

Ryan, J. *(dissenting)*. I respectfully dissent from the judgment of my colleagues in the majority and from what I perceive to be the strained construction they have given MCLA 418.161; MSA 17.237(161).[1] The conclusion is inescapable that the majority has inappropriately broadened the plain meaning of the footnoted language to include Mr. Betts' obviously unfortunate accident within the insurance coverage provided under the Worker's Disability Compensation Act. Although I share the compassion my colleagues have for the plaintiff, after consideration of the facts and circumstances in the case before us, I must conclude that to hold that the plaintiff was an "employee" of Ann Arbor Public Schools would be to extend the scope and coverage of the Worker's Disability Compensation

[1] "1) An employee as used in this act shall mean:

"a) Every person in the service of the state or of any county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written".

Act beyond that provided by the Legislature and, as a result, effectively rewrite the statute.

At the time of Mr. Betts' injury, he was enrolled at the University of Michigan as a full-time student. His major course of study was physical education. One of the requirements for his degree was that he train under the supervision of a certified teacher for a period of time in an undertaking commonly known as "student teaching" or "directed teaching". In accordance with this curriculum requirement, Betts was assigned to "student teach" at a junior high school in the Ann Arbor Public Schools. As a student teacher, Betts did not receive any pay from the defendant school system, nor did he enter into a contract of hire with it, nor was he promised future employment in the school system after his student teaching requirement was fulfilled.

On Betts' last day of "directed teaching", several students in the physical education class grabbed him and attempted to throw him into the swimming pool. In the course of this horseplay, a whistle attached to an elastic lanyard around Betts' neck hit his eye, resulting tragically in loss of the eye.

Betts filed a claim for workers' disability compensation benefits against the Ann Arbor Public Schools. Following a hearing and an appeal to the Worker's Disability Compensation Appeal Board, in a split decision, he was awarded benefits. The Court of Appeals reversed, judging Betts not to be an employee of the Ann Arbor Public Schools at the time of his injury.

The Worker's Disability Compensation Act provides that:

"An employee, who receives a personal injury arising

out of and in the course of his employment * * * shall be paid compensation * * * ." MCLA 418.301; MSA 17.237(301).

In the public sector, an employee is defined as:

"Every person in the service of the state or of any county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written. * * * " MCLA 418.161; MSA 17.237(161).

The sole point of controversy today is whether Betts was an employee of the Ann Arbor school district within the meaning of the Michigan Worker's Disability Compensation Act. In my judgment, he was not.

The essential purpose of workers' compensation legislation is to provide financial protection, in particular the partial restoration of lost wages, for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment. *Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960); *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959); *Pigue v General Motors Corp,* 317 Mich 311; 26 NW2d 900 (1947). The entire philosophy which underlies the legislation assumes that the worker is in a gainful occupation at the time of injury. See 1B Larson, Workmen's Compensation Law, § 47.10.

In concluding, for the purpose of compensation insurance, that an employment relationship existed between Betts and Ann Arbor Public Schools, today's majority overlooks both the expressed intent of the Legislature in enacting the Worker's Disability Compensation Act and the social philosophy which underlies it. The facts of this case dictate the conclusion that Betts was not in the

employ of Ann Arbor Public Schools at the time he incurred the injury to his eye.

While a student at the University of Michigan, Betts was assigned to a junior high school in Ann Arbor to fulfill his "directed teaching" requirement. His stay at the junior high school was not pursuant to any public appointment nor was there any express or implied contract between himself and the defendant school system. The controlling agreements were between Betts and the University of Michigan and in turn the University of Michigan and the Ann Arbor Public Schools. Betts' purpose at the junior high school was to further his education and collaterally to fulfill a University of Michigan requirement for a degree in physical education.

As between Ann Arbor Public Schools and Betts, the element of consideration for his services was totally lacking. The fact that Betts did not expect to receive monetary compensation is uncontroverted and the benefit of academic credits, referred to in the majority opinion, was awarded by the University of Michigan rather than the defendant. Moreover, there was no evidence that the period of student teaching was in any manner a condition precedent to future employment with the defendant. On the contrary, it is undisputed that Betts participated in the "directed teaching" program in order to fulfill one of the requirements for attaining a degree in physical education from the University of Michigan.

In essence, the facts of this case disclose that the relationship between the plaintiff and the defendant was no more than an arrangement whereby the Ann Arbor Public Schools accommodated Betts and the University of Michigan by providing the setting for in-classroom training. As such, it is evident that plaintiff's injury did not arise "out of and in the course of" an employment relationship with defendant school system. See *Board of Educa-*

*tion of Chicago v Industrial Commission,* 53 Ill 2d 167; 290 NE2d 247 (1972).[2]

I would affirm the decision of the Court of Appeals.

COLEMAN, J., concurred with RYAN, J.

---

[2] In *Board of Education of Chicago v Industrial Commission* a student working toward a bachelor of science degree in elementary education spent 100 hours in a Chicago public school tutoring students in reading readiness, substituting for teachers and supervising kindergarten activities under the supervision and approval of the assistant principal. These 100 hours fulfilled a DePaul University requirement for the education degree. While substituting for a teacher at the school, the student-teacher fell down a stairway and sustained a severe injury to her leg. The student-teacher filed for workers' compensation benefits, claiming she was an employee of the Chicago Board of Education.

An arbitrator for the Industrial Commission awarded workers' compensation benefits to the student-teacher and the Industrial Commission affirmed the award. The Cook County Circuit Court reversed the decision of the Commission and denied compensation. On appeal, the Illinois Supreme Court affirmed the circuit court judgment, denying benefits. The Court emphasized the fact that the element of consideration was totally lacking and that under the above described arrangement, neither the school nor the plaintiff could consider themselves to have an employer-employee relationship.