# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LLOYD CLAYTON MCCORMICK,

Defendant-Appellant.

UNPUBLISHED
February 13, 2018

No. 336159
Jackson Circuit Court
LC No. 15-005426-FH

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of assault by strangulation, MCL 750.84(1)(b), interference with electronic communication, MCL 750.540(5)(a), and domestic violence, MCL 750.81(2). The trial court sentenced defendant to 14 to 120 months' imprisonment for assault by strangulation, 150 days in jail for interference with electronic communication, and 93 days in jail for domestic violence. We affirm.

## I. BACKGROUND

This case arises out of an altercation that occurred on April 10, 2015, in Jackson County, Michigan. On April 10, 2015, Nakia McCormick, the ex-wife of defendant, went to the marital home to pick up some of their children's clothing.[1] While packing some clothing in the basement, defendant started screaming and yelling profanities in Nakia's face, accusing her of infidelity. Nakia testified that she ducked under defendant to get upstairs, and by the time she got to the kitchen, defendant had her cellular telephone in his hand and he pushed her up against the counter a couple of times. Nakia testified that defendant eventually grabbed her by the throat and that she was "kinda like scratching, pushing to get him away[,]" because she felt like she was going to pass out. Nakia was able to get away, but as she was heading out the front door, defendant kicked her in the back, she slid across the porch, and defendant dragged her by her shirt and hair back into the house. While this altercation was occurring, Nakia was screaming for

---

[1] At the time of this incident, Nakia had moved out of the home she shared with defendant a few weeks prior and had filed for divorce.

-1-

help and yelling that she was going to call 911. Defendant then took her cellular telephone, threw it on the floor, and crushed it wearing his cowboy boots.

After defendant crushed the cellular telephone, Nakia testified that defendant started choking her on the floor, so she picked up a DVD case from the floor and hit him with it. Nakia was then able to get away, run to her car, and pick her children up from school. Two of Nakia's children both testified as to Nakia's physical and emotional condition following the incident of domestic violence. Specifically, both sons testified that Nakia had been crying, and one noted that there were scratches around her neck. Neither child was surprised by this incident because both testified that they (1) had seen defendant choke and hit Nakia on multiple occasions, (2) heard defendant threaten to kill their mother,[2] and (3) that defendant had physically abused them in the past as well. Nakia called police once she arrived at her parent's house, and officers took photos of her injuries. After speaking with Nakia, the officers visited defendant, who told the officers that he only got physical when Nakia began to push him and he had to defend himself. Defendant also testified that Nakia was abusive and hit the children. At trial, defendant also claimed that Nakia, through the privileges of her employment, wrote prescriptions for him, for friends, and for herself. The jury convicted defendant as stated above. Defendant now appeals as of right.

## II. ANALYSIS

Defendant argues on appeal that he was denied a fair and impartial trial as a result of prosecutorial misconduct. We disagree.

"[T]his Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Thus, "[w]hen reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). However, because defendant failed to preserve this issue, our review is for plain error. *Aldrich*, 246 Mich App at 110. To avoid forfeiture of the issue, defendant must demonstrate plain error that affected his substantial rights and thereby affected the outcome of the proceedings. *Id*. "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

To establish prosecutorial misconduct, the governing inquiry is whether defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor has a duty to "seek justice and not merely convict[.]" *Id*. "Although a prosecutor may not argue a fact to the jury that is not supported by evidence, a prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence." *Callon*, 256 Mich

---

[2] Defendant's eleven-year-old son also recounted being told by defendant that defendant would kill him, his thirteen-year-old brother, his four-year-old brother and their mother if he told anyone about defendant's physical violence against the family.

App at 330. A prosecutor "may not vouch for the credibility of his witnesses by implying that he has some specialized knowledge of their truthfulness[,]" however, a "prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant argues that prosecutorial misconduct arose out of the prosecution's argument in closing and then in rebuttal. Specifically, defendant contends that the prosecution's statements impermissibly vouched for the credibility of the prosecution's witnesses. We have closely reviewed the challenged portions of the prosecution's closing argument, and observe that where this case presented a credibility contest between Nakia and defendant concerning the events of April 10, 2015, the prosecution could properly comment on the credibility of its own witnesses. *Id*. Moreover, contrary to defendant's assertion, the prosecution's closing statement regarding the credibility of Nakia and her two children did not imply that the prosecution had specialized knowledge of their truthfulness. *Id*. Rather, the prosecution pointed out to the jury that trial counsel's claim during his opening statement that Nakia changed her version of the events giving rise to this appeal multiple times was not supported by Nakia's testimony at trial.

Additionally, with respect to the prosecution's statements regarding defendant's children, rather than vouching for their credibility, the prosecution also permissibly noted that they were subjected to experiencing and witnessing physical violence in their home from defendant for many years. This assertion was grounded in the record evidence, where both children described multiple incidents of physical violence that they themselves experienced or that they watched defendant inflict on their mother. The prosecution also properly commented on defendant's behavior while testifying, specifically characterizing his actions in smiling and laughing as inappropriate, given the gravity of the charged offenses and the seriousness of the incident giving rise to this appeal. Moreover, the trial court instructed the jurors at the close of trial that they must decide the case on the evidence, and that the statements and arguments made by counsel were not evidence. *Watson*, 245 Mich App at 591-592 (recognizing that a curative instruction to the jury that it could not be swayed by sympathy or prejudice adequately protected the defendant's right to a fair trial). This jury instruction was sufficient to cure any alleged prejudicial effect defendant suggests was caused by the prosecution's statements. *Id*. at 586, 591-592.

Defendant also argues that he received ineffective assistance of counsel at trial. We disagree.

Generally, "[w]hether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court will review a trial court's factual findings for clear error, while reviewing de novo the trial court's constitutional determinations. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). However, because defendant's motion to remand was denied and no

*Ginther*[3] hearing was held, review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To demonstrate ineffective assistance of counsel, a defendant must (1) "show that counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced the defense." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland v Washington*, 466 US 668, 687, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks omitted). Trial counsel is given broad discretion in matters of trial strategy, and defendant must overcome "a strong presumption of effective counsel when it comes to issues of trial strategy." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Further, the failure to call witnesses only constitutes ineffective assistance of counsel where "the failure to do so deprives the defendant of a substantial defense[;]" one that "might have made a difference in the outcome of the trial." *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990); *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant argues that trial counsel was ineffective for failing to call additional witnesses to rebut the prosecution's arguments that defendant was abusive to his family and to support his defense theory at trial that it was Nakia who was abusive to the family, and that she was mentally unstable because of prescription drug abuse. At trial, defendant testified extensively regarding his theory of the case, stating that he was not abusive to Nakia, and that he did not physically abuse his children. Defendant also claimed that Nakia was the one that physically abused their children, and that she initiated the physical altercation that took place on April 10, 2015 by starting to swing at defendant during an argument.[4] Defendant also testified about Nakia's prescription drug abuse. Trial counsel also questioned Nakia regarding whether she wrote out prescriptions for herself and defendant, as well as the circumstances concerning her termination from her employment with a physician.[5] During his closing argument, trial counsel informed the jury that he had not called additional witnesses to support defendant's testimony that he was not a violent person, because to do so would have been cumulative and unnecessary. Instead, according to trial counsel, he chose to focus on the events of April 10, 2015. We note that at trial, Nakia testified regarding the injuries she sustained following the violent physical assault by defendant, and the testimony of her two young sons, her parents, and the police investigating the case corroborated her version of the pertinent events and her injuries. Photographs of Nakia's

<hr/>

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] Deputy Larry Jacobson of the Jackson County Sheriff's Department also testified that defendant shared this same version of events with him when he spoke with defendant on April 10, 2015.

[5] Contrary to defendant's allegation on appeal, we also observe that trial counsel vigorously cross-examined Nakia at trial. Specifically, trial counsel questioned Nakia about her prior testimony at the preliminary examination, her prior reports to the police, and her statements in an application for a personal protection order (PPO).

injuries taken after the physical assault, as well as of her destroyed cellular telephone, were also admitted at trial. Accordingly, we are not persuaded that counsel's decision was not grounded in sound trial strategy or that defendant was in any way deprived of presenting a substantial defense impacting the outcome of his trial. *Odom*, 276 Mich App at 415; *Kelly*, 186 Mich App at 526.

Defendant also argues that trial counsel had a personal conflict of interest because of an alleged relationship between trial counsel and the prosecution's wife. "A defendant has the burden of establishing a prima facie case of ineffective assistance of counsel. He must show that an actual conflict of interest existed and adversely affected the adequacy of his representation." *People v Lafay*, 182 Mich App 528, 530; 452 NW2d 852 (1990) (citation omitted). Here, defendant has not demonstrated that any alleged relationship amounted to a conflict of interest that resulted in ineffective assistance of counsel.[6] Where there is no evidence of an actual conflict of interest, we are not persuaded that trial counsel's performance fell below an objective standard of reasonableness. See *Carbin*, 463 Mich at 600.

Additionally, defendant argues that trial counsel failed to object to several comments made by the prosecution during closing arguments. As set forth above, the prosecution's statements were not improper, and trial counsel is not required to raise a meritless objection. *Erickson*, 288 Mich App at 201. Because defendant has failed to show that trial counsel's performance fell below an objective standard of reasonableness, defendant is not entitled to relief on his claims of ineffective assistance of counsel. *Carbin*, 463 Mich at 600.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

---

[6] In fact, while testifying at trial, defendant stated that he had a "great defense attorney."