SIMEON BEDFORD *vs.* THE NEWARK MACHINE COMPANY.

1. The only criterion of insolvency, furnished by "the act to prevent frauds by incorporated companies," (in regard to companies other than banking) is the *suspension of business.*

2. The act of insolvency contemplated by the statute, is committed at the time the company suspends its ordinary business operations.

3. Under the 42d section of "the act to authorize the establishment, and to prescribe the duties of companies for manufacturing and other purposes," all laborers in the employ of the company at the time of the *suspension of its business operations,* and not those only in their employ at the time of instituting legal proceedings against them as an insolvent corporation, are entitled to priority in payment over the other creditors of the company.

4. The *apprentices* of such company are entitled to their wages without regard to the time that they were last actually laboring for the company. Their legal rights cannot be affected by the refusal or inability of the company to furnish them with employment.

An injunction having been issued against the defendants as an insolvent corporation, under the " act to prevent frauds by incorporated companies," receivers were appointed who

are now settling the affairs of the company. The receivers have filed their petition, asking the direction of the court in the disposition of the funds in their hands.

*Ranney,* for petitioner.

*J. P. Jackson, jun.,* for laborers and apprentices.

THE CHANCELLOR. The bill in this case was filed on the twenty-third of October, 1861, and an injunction thereupon issued against the defendants as an insolvent corporation, restraining them from exercising their corporate powers.

On the twenty-ninth of October, 1861, receivers were appointed, by whom the affairs of the company are being settled, and who now ask the direction of the court in the disposition of the funds in their hands.

The company was incorporated under the provisions of the act of 1849, authorizing the establishment of manufacturing companies, and of the supplements thereto. *Nix. Dig.* 492. By the forty-second section of the act, it is provided that, " in case of the insolvency of any company formed under the provisions of this act, the laborers in the employ of said company shall have a lien upon the assets thereof for the amount of wages due to them respectively, which shall be paid prior to any other debt or debts of the company." At the time of filing the bill and issuing the injunction, the company was indebted to about forty laborers in the sum of $2208.07. Of these laborers, only twelve were in the actual employ of the company at the time of filing the bill. The others had ceased working for the company at various times, from and after the twenty-third of March preceding. It is insisted on the one hand, that they are all entitled to priority in payment over the other creditors of the company; and on the other, that those laborers alone are entitled to priority, who were in the employ of the company when the proceedings in this cause were instituted, and the business of the company restrained. By the terms of the act, the lien upon the assets of the company, and consequent priority in payment, is not given to laborers to whom the

Bedford v. Newark Machine Company.

company are indebted merely, but to laborers *in the employ of the company.* There is a marked contrast between the phraseology of this act and that of the "act for the protection and relief of mechanics and laborers." *Nix. Dig.* 34, § 27. By the terms of the latter act, under an assignment for the benefit of creditors, the wages of clerks, minors, mechanics and laborers, *due at the time of making the assignment* from the person making the same, are declared to be preferred debts, and entitled to priority in payment. It seems probable that the terms of the act now in question, as well as those of the " act to secure to operatives in manufactories and other employees, their wages," *Nix. Dig.* 46, § 69, were adopted not only to secure remuneration to the operatives, but upon a principle of sound public policy to encourage manufactures by inducing the operatives to continue their labor, notwithstanding the inability, real or apprehended, of the employer to pay their wages. Those laborers only are entitled to priority in payment, who were in the employ of the company at the time of their becoming insolvent. But how is that time to be determined? The company were embarrassed and found difficulty in meeting their engagements as early as April, 1861, and the facts now before the court might perhaps justify the conclusion that they were then indebted beyond their ability to pay. But they continued their business operations, so far as appears, uninterruptedly, until the twenty-fourth of September, when they made their last weekly payment to their laborers. On the same day two judgments were entered, and writs of *fieri facias* issued against them for small amounts. By virtue of these executions levies were made, and the premises occupied by the defendants were closed by the sheriff, but after remaining closed a day or two they were again opened. On the thirtieth day of September, two other judgments, amounting to about $24,000, were entered and executions issued thereon, after which time until the issuing of the injunction, the laborers remaining in the employ of the company were employed on short time; the amount of

wages paid them at any one time not exceeding one third
the amount due. All the above executions were outstanding,
unsatisfied claims on the property of the company, when the
injunction was issued. The bill, which is exhibited by a
director of the company, charges that the company were in-
solvent and became known to be so on the first of October,
1861. The bill further charges that the company is insolvent
to the knowledge of the complainant, and cannot resume its
business with safety to the public, and advantage to the
stockholders. There is no evidence of any change in the
operations of the company between the first of October and
the time of issuing the injunction. Their business was sus-
pended on the first of October, as fully as at the time of
granting the injunction. From that time the machinery
and stock of the company, manufactured and unmanufactured,
were under levy for an amount exceeding their value, and
were in the hands and under the control of the sheriff. The
operations of the company were virtually suspended from
inability to carry them on, upon the first of October. The
act of insolvency was then committed. All the laborers at
that time in the employ of the company have a lien for their
wages, and are entitled to priority in payment out of the
assets in the hands of the receivers. It is unnecessary to
inquire whether the insolvency of the company may not be
dated from the twenty-fourth of September, when the works
were first closed under execution, for none of the laborers
left the employ of the company between those dates. Prior
to the twenty-fourth of September, there is no ground upon
which the company can be declared insolvent for the pur-
poses of the present inquiry.

The act respecting insolvent corporations, under which
these proceedings were instituted, looks to the suspension of
the ordinary business of the company, or some overt act by
which its insolvency may be ascertained and declared. The
court cannot, upon an inquiry of this nature, undertake to
investigate the financial ability of the corporation at previous
periods, founded upon mere failure to meet its engagements,

Bedford *v.* Newark Machine Company.

or upon the actual state of its finances after its business has been suspended. The bankrupt laws of England have, with great precision, defined what shall constitute an act of bankruptcy, upon which proceedings may be instituted and the party declared a bankrupt. The act in question has furnished such criteria or evidences of insolvency in regard to banking companies. *Nix. Dig.* 372, § 6. In regard to other companies, no criterion is furnished except the *suspension of business.* Before an injunction can issue, it must appear that the company has become insolvent, and shall not be about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders. *Nix. Dig.* 372, § 5.

The *apprentices* of the company are entitled to their wages without regard to the time that they were last actually laboring for the company. There is no evidence that they were discharged or released from their indentures prior to the act of insolvency. Their legal rights cannot be affected by the refusal or inability of the company to furnish them with employment.

It appears from the receivers' report, that large expenses have been incurred in repairs to the real estate, and to the machinery covered by mortgages and executions, and in employing watchmen for the safe keeping of the property, both real and personal. It is proper, therefore, that it should be referred to a master, to ascertain and report what, and to what an amount of the said expenses and disbursements shall be paid from the fund raised from the sales of machinery and personal property encumbered by said mortgages and judgments. The receivers' accounts will also be referred to a master, with directions to examine, and, if necessary, to restate the same; and also to report what will be a reasonable and just compensation to be allowed to the receivers.