This is an appeal from the action of the receiver in disallowing certain claims filed by claimant, or, rather, his refusal to regard them as preferred claims. *Page 121 
The facts are these: On December 10th, 1927, this matter was first presented to me. The defendant corporation requested a continuation in order that a reorganization might, if possible, be effected. Complainant's solicitor asked if I would retain the bill in my office. I said it must either be filed or retained by counsel. In the latter case there would be nothing to prevent an application to another vice-chancellor or a proceeding in bankruptcy. The bill was not filed. January 9th, 1928, the bill was filed by me and I issued an order to show cause. On February 21st, 1928, I appointed a statutory receiver with the consent of the defendant corporation. This obviated the necessity of the issuance of subpoenas. In the meantime claimant advanced money for the corporation's payrolls, as there were no available funds and took assignments of their claims from the employes. The total advancements made in this manner amounted to $6,176.78.
The receiver disallowed the claim as a preference because he said that if an employe assigns his claim before insolvency is decreed his assignee acquires no preferential lien, and also because the lien of a wage claimant comes into existence as of the date that insolvency is decreed, and if an assignment is made of such claim before such decree, assignee acquires no preferential lien.
In the case of Delaware, Lackawanna and Western Railroad Co.
v. Oxford Iron Co., 33 N.J. Eq. 192, in discussing this question the court says:
"The wages, to be within the protection of the statute, must be due to a person in the employ of the corporation at the time when it becomes insolvent. If, prior to that time, they are assigned, so that when insolvency occurs they are not due to an employe, no lien arises. Such, I think, is the plain direction of the statute. Its words are: `In case of the insolvency of any corporation, the laborers in the employ thereof shall have a lien upon the assets thereof, c.' Only those in the employ of the corporation at the time of its insolvency are within either the words or the policy of the statute. The purpose of the statute is obvious. It is sometimes a matter of the utmost importance to the public that the business of *Page 122 
an insolvent corporation should be kept in operation, and it is almost always true that he property of such bodies cannot be preserved unless they are kept up as going concerns. The statute was designed to accomplish both of these purposes. And to this end it was clearly necessary that the employes of a corporation in an insolvent condition, whose skill and labor are indispensable to the continuance of its operations, should be made secure for their wages. To enable an insolvent corporation to retain its employes is the primary object of the statute. Persons holding claims for wages who are not in the employ of a corporation at the time when it becomes insolvent are not, therefore, within its policy nor entitled to its protection.
"It is undoubtedly true that the assignment of the debt carries with it any security which the assignor holds. But when these assignments were made the assignors had no security or lien. The right of lien arose subsequently, and though the assignors may still have been in the employ of the corporation when it became insolvent, the wages previously assigned were not due to them, but to persons not entitled to the character of employes. The statute creates a lien in favor of no person except an employe who is in the employ of a corporation at the time when it becomes insolvent and in favor of no debt except for wages due an employe who is in the employ of a corporation at the time when it becomes insolvent."
The court, through Vice-Chancellor Gray, goes even further in the case of Campbell v. Taylor Manufacturing Co., 64 N.J. Eq. 622,
in which the court set aside the receiver's allowance of a preference where the wage claim was assigned, and comments on the general equities of the proposition as follows:
"The practice in this court in allowing these statutory preferences, has been to limit them to persons who were within the class named in the statute. Consolidated Coal Co. v.Keystone Chemical Co., 54 N.J. Eq. 309. The terms used in the act expressly prescribe that the preference is given to laborers and workmen and persons doing labor in the *Page 123 
regular employ of the company at the time of the insolvency. It is a purely statutory right, and it was probably created for the purpose of preventing a general exodus of the workmen employed by corporations in anticipation of the failure of the company. It is intended to induce employes to remain at their work, even if financial disaster be threatened, by assuring them that they shall not lose their wages. A company which has a large number of employes may be in some financial straits, and may yet, if it can continue its business, regain its prosperity. But if its employes, anticipating that their wages will not be paid, leave its employ in panic, absolute disorganization and destruction of the business may follow. The statute here intervenes and assures them that they, at all events, shall be paid. It refers by its very words to laborers, workmen and employes only, giving them a preference. There is neither provision for, nor recognition of, any power in the employes to assign their rights, nor of any right in anyone who may have loaned the company money with which to pay wages, to have any equitable subrogation to the privileges of the company's employes." See, also, Cogan v. Conover Mfg.Co., 69 N.J. Eq. 358.
This is admitted to be a correct statement of law by counsel for complainant. He says in his brief: "The whole question involved and the only thing for this court's consideration is whether December 10th, 1927, is the date upon which proceedings in insolvency were actually instituted and begun against such insolvent corporation."
Vice-Chancellor Backes, in Hermann v. Mexican PetroleumCorp., 85 N.J. Eq. 367 (at p. 370), says:
"It is true in common parlance we use the expression of `filing of the bill' to denote the commencement of a suit in chancery, instead of referring to the issuance and service of the subpoena, or the making of a bona fide attempt to serve it after the bill has been filed, which is the actual commencement of the suit in this court."
And again in the words of the learned vice-chancellor: "The authorities upon this point are collected in United States v.American Lumber Co., 80 Fed. Rep. 309; 85 Fed. *Page 124 Rep. 827. The presentation of a bill to the chancellor, and the granting thereon of an order to show cause why an injunction should not issue with an ad interim stay brings the litigation before him for a limited purpose and is not the institution of the suit. It is merely before him on a motion to consider the question whether an injunction should issue when the suit should be commenced."
In the case of Delaware, Lackawanna and Western Railroad v.Oxford Iron Co., supra, the court (at p. 195) says:
"The insolvency meant in the act is that ascertained by the court as a ground of its jurisdiction. Until a corporation becomes insolvent and this fact is laid before the court in the regular method of procedure, it has no authority to interfere with the corporation. Until insolvency is charged against it in legal form the court is bound to presume it was solvent. Upon this point Chancellor Green in the case just cited (Bedford v.Newark Machine Co., 16 N.J. Eq. 117) said that the statute looks to the insolvency which leads to the proceedings resulting in a judicial determination of insolvency. He further said: `The court cannot upon an inquiry of this nature [and the inquiry then before the court was as to who was entitled to this lien] undertake to investigate the financial ability of the corporation at previous periods, founded upon a mere failure to meet its engagements or upon the actual state of its finances after its business has been suspended.' The insolvency which gives rise to this lien is that which is judicially ascertained and becomes the ground of the court's jurisdiction. The court has nothing to do with the previous condition of the corporation. The lien given by the statute comes into existence as of the date which the court adjudges to be the time when the insolvency accrued which gives it jurisdiction."
In view of these cases I do not see how I can hold that there was an insolvency on December 10th, 1927, when counsel discussed the matter with me, but filed no bill. Neither do I think there was an insolvency on January 9th, 1928, when I filed the bill and advised an order to show cause. I did not then decree insolvency, only set a day to *Page 125 
determine whether it existed. In my opinion the actual insolvency was decreed according to the statute and the reasoning of the cases which I have cited on February 21st, 1928, when insolvency was found and a receiver appointed. The last assignment of wage claims was on December 31st, 1927. This was before either the order to show cause or the actual adjudication. The assignments, therefore, having been made before insolvency, the assignee is not entitled to a preference.
I will dismiss the exceptions and confirm the action of the receiver.