Andre N. **DURAND**

v.

**CITY OF WOONSOCKET.**

No. 85–573–M.P.

Supreme Court of Rhode Island.

Feb. 17, 1988.

Richard F. Kirby, Paul E.B. Platiau, Mactaz, Keefer, Kirby & Carroll, Woonsocket, for plaintiff.

James E. O'Neil, Atty. Gen., Richard B. Woolley, Nicholas Trott Long, Asst. Attys. Gen., Lauren Motola Davis, Healey & Pearson, Providence, for defendant.

OPINION

MURRAY, Justice.

This petition comes before us on certiorari to review a decree of the Workers' Compensation Commission (commission) denying benefits to Andre Durand (petitioner). The trial commissioner ruled that the petitioner, who sustained back injuries while participating in a work-fare program ad-

ministered by the city of Woonsocket, was not an "employee" within the meaning of G.L. 1956 (1979 Reenactment) § 28–29–2. He concluded that the petitioner failed to establish a contract for hire and that the relationship between the petitioner and the city was not voluntary. The Appellate Commission affirmed the decision of the trial commissioner. We agree.

The petitioner filed an original petition seeking compensation benefits for a back injury allegedly sustained while lifting a shovel full of dirt when working under the direction of the Woonsocket Park and Recreation Department. A chronology of petitioner's work pattern as gleaned from the record indicates that he originally worked for the city in March 1979 in a public work-incentive program (WIN) jointly funded by the state and the federal governments. The petitioner testified that when funding provided through WIN was exhausted approximately eight months later, he was laid off.

Thereafter petitioner applied for general public assistance (GPA), and he was approved for assistance on the condition that he participate in a "work-fare" program. Participation in the work-fare program is a requisite predicate to receiving public funds pursuant to G.L. 1956 (1977 Reenactment) § 40–6.1–2, as enacted by P.L. 1979, ch. 410, art. 4, § 1, which provides in part:

"Participation requirement —As hereafter provided, employable persons receiving financial support from the state shall be required to participate in the work training program * * *. [A]nd all of the several cities and towns participating in the general public assistance program (GPA) shall be required to provide work training opportunities for residents of their respective cities and towns who receive GPA support."

Ms. Joan Carbone, director of the city welfare department, testified regarding the various social programs relevant to the case. She could not comment on petitioner's case specifically because of the confidentiality of his records. She stated that applicants for GPA, if employable, are required to participate in a work-fare program. Ms. Carbone explained that an individual who is the head of a household and capable of being employed is required to participate in a work-fare program and, depending on the number of hours worked on a weekly basis, has a grant of seventy-five cents per hour added to the GPA. By mandate, the city's role is to administer the program. This includes monitoring hours worked and paying the recipients, after which the state reimburses the city on a monthly basis. Ms. Carbone testified that individuals who refused to participate would be removed from public assistance rolls. However, she emphasized, the dependents continue to be financially protected by a different public-assistance program. In addition, responsibility for health-care expenses incurred by recipients of public assistance is assumed by the state medical-assistance program.

The trial commissioner stated that the fundamental issue was whether petitioner was an employee of the city of Woonsocket within the definition of "employee" as set forth in § 28–29–2 of the Workers' Compensation Act. The commissioner acknowledged that § 28–33–1 provides coverage to employees who sustain personal injuries arising out of and in the course of their employment. Section 28–29–2 defines the term "employee" as follows:

"(b) The word 'employee' means any person who has entered into the employment of or works under contract of service or apprenticeship with any employer * * *."

The trial commissioner noted that in *Spikes v. State*, 458 A.2d 672, 674 (R.I. 1983), this court held that in order for an employer-employee relationship to exist the "services performed must be voluntary on the part of the employees. Wages must be paid and the two parties must be capable of giving their consent to enter into the relationship." The trial commissioner applied the analysis and determined that petitioner did not establish a contract for hire and that the relationship between the parties was not voluntary.

The appellate commission of the Workers' Compensation Commission affirmed and found no error in the trial commissioner's application of *Spikes v. State.* The appellate commission held that the relationship between petitioner and the city was not voluntary. It further found that the source of money received by petitioner was a grant of public funds, and therefore, the money could not be characterized as wages or remuneration. We agree.

This court may review a decree of the commission on the ground that the commission erred on a question of law. *Buonauito v. Ocean State Dairy Distributors, Inc.,* 509 A.2d 988 (R.I. 1986). The sole issue for review is whether a participant in a state-mandated work-fare program is an employee within the meaning set forth in the Workers' Compensation Act. The statutory language in the act is silent in regard to participants in a work-fare program as a requisite to receiving general public assistance. We are of the opinion that the test set forth in *Spikes* that establishes whether a person is an employee by first determining whether an employer-employee relationship did exist, was properly applied in the case at bar.

The same issue has been addressed in other jurisdictions. In *Closson v. Town of Southwest Harbor,* 512 A.2d 1028 (Me. 1986), the Supreme Judicial Court of Maine held that a claimant injured while participating in a work-fare program administered by a town as part of a general assistance program was not an "employee" and was not eligible for workers' compensation benefits. The Maine Supreme Court reasoned that a person in a work-fare program " 'earned for his services not remuneration but rather continued eligibility for receiving general assistance * * *.' " 512 A.2d at 1030. The court stated that the purpose of public assistance is to "provide immediate aid to persons who are unable to provide the basic necessities to maintain themselves or their families. * * * The work requirement imposed on a recipient as a condition for continued eligibility 'has neither changed the nature of the payments, nor made them subject to any other incidents of wages.' " *Id.* The court conclud-

ed that since work-fare-program participants "neither received nor could have expected to receive remuneration or wages for the services that he performs, no employment relationship existed between the Town and the plaintiff that would make the provisions of the Act applicable." *Id.*

We agree with the foregoing analysis and deem it appropriate to resolve the issue presented. Further, we find no language in the Workers' Compensation Act or the public-assistance statute which signals legislative intent to establish an employer-employee relationship between the administering municipality and the recipient of general assistance.

For the reasons stated above the petition for certiorari is denied and dismissed, the writ previously issued is quashed and the decree of the Workers' Compensation Commission is affirmed.

FAY, C.J., did not participate.