568 So.2d 712 (1990)
Carolyn WALLS
v.
NORTH MISSISSIPPI MEDICAL CENTER & UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 07-CC-58822.
Supreme Court of Mississippi.
September 26, 1990.
*713 Roy O. Parker, Jr., Tupelo, for appellant.
Michael G. Soper, Soper Russell Richardson & Dent, Tupelo, for appellee.
EN BANC:
PRATHER, Justice, for the Court:
The issue in this workers' compensation case is whether a student nurse injured while engaged in clinical training at a hospital was an apprenticeship employee of the hospital within the meaning of the Workers' Compensation Act. The Administrative Judge, Workers' Compensation Commission, and Circuit Court of Lee County held that student nurse Carolyn Walls was not an employee, express or implied, of North Mississippi Medical Center and denied compensation to Walls from the hospital and its insurer, United States Fidelity and Guaranty Company. This appeal ensued on this issue.[1]

I.
Thirty-two-year old Carolyn Walls was enrolled in a one-year nurses' program at Itawamba Junior College (IJC), seeking a degree as a Licensed Practical Nurse (LPN). It is presumed that she paid tuition to IJC, but she did not testify at trial to that fact. She received classroom instruction at the college and clinical training as a student nurse at a health care facility. When performing her clinical training on April 17, 1984, Walls was moving a patient at the direction of a hospital-employed nurse. As she did so, she felt a pain in her lower back. The pain hampered Walls' ability to perform her work and eventually forced her to seek treatment for the injury. Drs. William Brown and John McFadden treated Ms. Walls for her injury, which was diagnosed as a lumbar disk injury. The injury manifested itself in the form of decreased mobility, pain and tenderness, and ultimately forced her to drop out of the nursing program.
The issue on appeal is whether Carolyn Walls, while under a student intern program and performing services in the hospital, at the direction of the hospital's nurses, was an apprentice employee of the hospital as a matter of law for purposes of workers' compensation benefits. There is no dispute of the fact that Walls was injured while interning at the hospital, and that the activities which caused her injury on that occasion were performed at the direction of the hospital's nurses. The Workers' Compensation Commission affirmed the Administrative Judge's conclusion that Ms. Walls failed to establish that she was an employee of the hospital. The crucial facts in this case are undisputed, and are as follows.

II.

A. The Nursing Program
The nursing program in which Carolyn Walls enrolled began with four (4) months *714 of classroom instruction. Following the classroom instruction, the remaining eight (8) months comprised clinical training at a medical facility, in this case, North Mississippi Medical Center, in conjunction with more classroom instruction. While she was undergoing her training at IJC as a student, Walls shared all the same holidays that other students enjoyed, including Thanksgiving, Christmas and Spring Break, the same hours as all other IJC nursing students, and the same rights and privileges as other junior college students. She did not work the same hours as North Mississippi Medical Center employees, but only worked where and when scheduled by the Nursing Department of IJC. Student nurse training was given by IJC nursing instructors at the hospital. The nursing students worked five-hour shifts at the hospital, five days a week, excluding the weekends.
When the students entered the clinical portion of their training, they reported to the health facility at which they were to receive their clinical training, rather than reporting to the IJC campus. At the beginning of a working day at the hospital, the student nurses would report to the IJC nursing instructor on duty. Faye Taylor, a fellow student nurse with Ms. Walls, testified that these nursing instructors assigned the student nurses to designated patients and acted as supervisors for the students.
The nursing students were under the supervision and control of the head nursing instructor who was a teacher at IJC, and the students were primarily the responsibility of the head nursing instructor. However, Walls testified that she was not completely under the direction and control of the nursing instructor. In addition to receiving instructions from instructors at IJC, students in the program were also subject to receiving instructions from nurses who were employees of the Medical Center. In fact, Walls had administered an injection and was moving a patient at the direction of a Medical Center nurse when she was injured.
Walls testified that they were expected to follow orders from Medical Center nurses as they would instructions from the IJC nursing instructors. She also stated that if told to stop a specific activity by a Medical Center nurse, she would be expected to do so. The students were also encouraged to work with the nurses at the Medical Center and ask them questions if necessary. The student nurses did not receive clothes, room, board, tuition, or a monthly allowance. Walls did receive $40.00 a week  $30.00 for travel expenses and $10.00 for child care  from the Mississippi Employment Security Office, a federal assistance program.
Walls testified during cross-examination that she never listed any income from the North Mississippi Medical Center on her tax returns. The patients cared for by the students were picked out by nurses at the Medical Center because they thought the students could "handle" them. During cross-examination, Ms. Walls insisted that the nursing students were assigned patients by their instructor, at the direction of the nurses at the Medical Center. The nursing students also followed IJC policy concerning sick leave and vacations, not those of the hospital.
B. The Law
When a person is injured while on the job, the person is entitled to compensation under the Workers' Compensation Act, not because of any act or omission of his employer, but because an employment relationship exists [citations omitted]. The question of whether a person is an employee may be one of fact, of mixed law and fact, or of law only. Where the facts are undisputed, the question is one of law, and the Court[] may independently review those facts to determine the correct answer.
Barragan v. W.C.A.B., 195 Cal. App.3d 637, 240 Cal. Rptr. 811, 814-815 (1987). The facts of this case are undisputed; therefore, this Court must determine whether Walls is an "employee" as a matter of law. The language of the Mississippi Workers' Compensation Act is the statutory authority by which this case is determined. The applicable section of Workers' Compensation *715 Act related to the statutory definition of "employee" for workers compensation purposes defines employee as follows:
Section 71-3-3(d), M.C.A. (1972):
... [A]ny person, ... in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied...
Since the right to workers' compensation is statutory and is exclusive of any other statutory and common law remedies, it is important to critically analyze the undisputed factual situation in determining coverage under the Workers' Compensation Law (WC). Coverage under workers' compensation law rests upon the status of employer-employee relationship. It has been held that the terms "employer" and "employee" as used in the Mississippi Workers' Compensation Act are synonymous with the words "master" and "servant" as used under common law. Robertson v. Stroup, 254 Miss. 118, 180 So.2d 617 (1965). Hillcrest Hospital v. State Industrial Court, 452 P.2d 781 (Okla. 1969); Landrum v. Ownby, 290 P.2d 400 (Okla. 1955). That relationship is evidenced by the "contract of hire or apprenticeship, oral or written, express or implied." "The traditional features of an employment contract are (1) consent of the parties, (2) consideration for the service rendered, and (3) control by the employer over the employee." Barragan, 240 Cal. Rptr. at 815. However, courts have held in workers' compensation cases that these common law requirements "should not be rigidly applied." Id.
In the case sub judice, the Administrative Judge and Commission found that no written or oral "contract for hire" between Walls and the Medical Center existed. The record is devoid of any written contractual agreement between the Hospital and IJC, requiring either party to effect workers' compensation insurance; it is also devoid of any indemnification agreement by IJC to insure the hospital against loss or damage resulting from trainee injury. Absent a written or oral contract of employment, a claimant must look further within the statutory language.
The statute also refers to a "contract of hire, ... express or implied ...;" thus, this Court next addresses an implied contract of hire. In the case of Betts v. Ann Arbor Public Schools, 403 Mich. 507, 271 N.W.2d 498 (1978), a university student while "practice teaching" in a high school to fulfill his student teaching requirement, was serving under an appointment to the school and was determined to be an "employee" of the school district for purposes of workers' compensation. The statutory language of the Michigan law defines an employee to be "... every person in the service of the state or of any county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written." 271 N.W.2d at 499. The Court held that the practice teacher was serving the school district under "appointment" and under an implied contract of hire. Ostensibly, the Michigan statutory language is distinguishable from the Mississippi law in its use of the word appointment, but is identical in use of the words "implied ... contract of hire." Without deciding the issue of whether an implied contract of hire exists in the case sub judice, this Court further examines the statute.
Walls asserts that if she is not an employee, she is an apprentice under the statute. Accordingly, this Court examines the apprenticeship status to determine if these facts meet the three criteria of an employer-employee relationship. The first of these requirements is consent of the parties.
The Mississippi statute has the additional words "contract of ... apprenticeship, written or oral, express or implied ..."[2] In Heget v. Christ Hospital, 26 N.J. Misc. *716 189, 58 A.2d 615, 616 (1948) that Court stated:
In Black's Law Dict., 3rd Ed., p. 129, an apprentice is defined as "a person, usually a minor, bound in due form of law to a master, to learn from him his art, trade or business, and to serve him during the time of his apprenticeship." Lyon v. Whitemore, 3 N.J.L. 845. Thus, the apprentice rendered services to his master in some trade or employment with the primary purpose of learning the trade, business or profession of the master. The apprentice usually received no remuneration for his services outside of his board and lodging. Stokes v. Hatcher, 4 N.J.L. 84. For services rendered by him, no doubt the master received payment from the public. Bedford v. Newark Machine Co., 16 N.J. Eq. 117.
Although an apprentice is not statutorily defined, use of its ordinary definition has been applied by the courts.
An "apprentice" is commonly defined as "one who is learning by practical experience under skilled workers a trade, art, or calling usually for a prescribed period of time and at a prescribed rate of pay." Webster's Third New International Dictionary 106 (Unabridged 1961).
There is one workers' compensation case from Mississippi involving an apprentice. In that case, the worker's apprentice status was only tangentially related to the case itself, and thus, it provides little assistance here. See Cox v. International Harvester Co., 221 So.2d 924, 924 (Miss. 1969).
There is evidence in this record of a cooperative teaching agreement between IJC and the Medical Center, although the specific terms are not in evidence. The Medical Center did not put on any affirmative proof; it only cross-examined the claimant's witnesses. Walls was a nursing student enrolled at IJC, and IJC nursing students trained at North Mississippi Medical Center. Under this cooperative arrangement, nursing instruction was primarily given by IJC nurse instructors at the Medical Center, but not entirely. Walls administered a "shot" to a patient at the direction of a hospital-employed nurse. On the date of her injury, a hospital-employed nurse directed her to get a patient up to walk, and it was while following this direction that Walls injured her back. In general, the student nurses assisted in the care of hospital patients and did general hospital duties as a part of their practical training. These same duties were performed by contractual hospital employees as well  albeit these duties may have been "`menial and manual' and of the sort that would be done by a laborer or work[er]." In re Brewer's Case, 335 Mass. 601, 141 N.E.2d 281, 283 (1957). Walls was not a volunteer in the performance of these duties, nor was the Medical Center required to accept the work of a student nurse. It, therefore, can be concluded that all these facts support the conclusion that there was a consensual relationship between the parties to the arrangement. The first test of an apprenticeship employee relationship is met.
Secondly, the factor of consideration for the services rendered is next addressed. The Mississippi statute defines "wages" as:
"Wages" includes the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of injury, and also the reasonable value of board, rent, housing, lodging or similar advantage received from the employer and gratuities received in the course of employment from others than the employer.

Miss. Code Ann. § 71-3-3(k) (Supp. 1989).
As the statute denotes, payment of money is not the only form of benefit under the statute. In the case sub judice, all parties concede that Walls was not paid a wage by the hospital, nor was she furnished board, rent housing, or lodging. However, the statute provides that "wages" include a "similar advantage received from the employer," a phrase which necessitates analysis in this case.
A wide variety of cases from other jurisdictions have dealt with workers' compensation claims involving students and/or student nurses. These cases vary widely in their factual patterns, the statutory language, and in the result reached. For a *717 representative listing of those cases which have denied benefits, see Henderson v. Jennie Edmundson Hospital, 178 N.W.2d 429 (Iowa 1970) (nurse's aide trainee who received no wages was not an employee, nor was she an apprentice); Otten v. State, 229 Minn. 488, 40 N.W.2d 81 (1949) (student nurse an employee of university, not the hospital); Krause v. Trustees of Hamline University of Minnesota, 243 Minn. 416, 68 N.W.2d 124 (1955) (same); Hillcrest Hospital v. State Industrial Court, 452 P.2d 781 (Okl. 1968) (student nurse who received no wages from hospital was not their employee).
Other courts have granted benefits to the injured student teacher. As noted earlier, in Betts v. Ann Arbor Public Schools, 403 Mich. 507, 271 N.W.2d 498 (1978), a university student who was student teaching at a local high school was found to be an employee of the school district and was awarded benefits for an injury to his eye. The student teaching was part of the requirements for successfully obtaining a degree and becoming certified to teach. The Court in Betts affirmed a lower court finding of an implied contract for hire. 271 N.W.2d at 499. The Court also mentioned the mutually beneficial nature of the student teaching arrangement. Id. at 500-01.
In In re Brewer's Case, the court awarded benefits to a student nurse who paid tuition to the hospital and worked regular shifts in exchange for room and board, 141 N.E.2d 281 (1957). The decision also listed numerous jurisdictions which have held that a student nurse is an employee. Id. at 282.
In Heget v. Christ Hospital, 26 N.J. Misc. 189, 58 A.2d 615 (1948), the claimant received room, board and uniforms from the hospital. The Court specifically compared her working situation to that of an apprentice and awarded her workers' compensation benefits. 58 A.2d at 616-17.[3]See also, Oelrich v. Schlagels, Inc., 426 N.W.2d 430, 433 (Minn. 1988) (Training as a student nurse sufficient to qualify as "payment" under a contract for hire).
In virtually all the above-cited cases, whether benefits were awarded or not, the student very seldom earned a direct monetary wage from the hospital or "employing" body. This fact should be of little or no consequence. One of the foremost treatises in the field of workers' compensation law addresses this very point:
The element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training, such as might be furnished a student nurse or hospital intern or laboratory assistant trainee, or student teacher are treated as the equivalent of wages.
1C A. Larson, The Law of Workmen's Compensation § 47.43(a), at X-XXX-XXX (1986) (emphasis added) (footnotes omitted).
The holding in Wright v. Wilson Memorial Hospital, Inc., 30 N.C. App. 91, 226 S.E.2d 225 (1976), is most analogous to the case sub judice. The court held that a student who was engaged in on the job training at a hospital as a lab technician was acting as an "apprentice," and was therefore an "employee" subject to provisions of the workers' compensation act. Although the student sued the hospital for negligence, the court held that she had no civil remedy, but that her exclusive remedy was under the workers' compensation law. Noteworthy to the consideration of this case is the following observation from Wright, supra.
The job status of apprentice medical-related personnel is highly problematic and usually must be determined not only on a case-by-case basis but also with special regard to relevant statutory provisions. Though possibly and seemingly incongruous, a lab technician trainee could be considered a student for some purposes and an employee for others. In this regard, we are aware of the recent National Labor Relations Board decision in Cedars-Sinai Medical Center and Cedars-Sinai *718 Housestaff Association, 223 N.L.R.B. No. 57 (March 19, 1976), wherein the Board in a four to one decision held that interns, residents and clinical fellows were "primarily students" and consequently not employees subject to the Labor Act's collective bargaining provisions. We must consider this decision in the light of the unique history and purpose of the National Labor Relations Act in treating the collective bargaining process and in the light of the educational programs for interns, residents and clinical fellows in hospitals affiliated with medical schools, which programs are fully accredited by the Council on Medical Education of the American Medical Association and by the various specialty boards. Sub judice, we are concerned with coverage under the Workmen's Compensation Act of trainees who learn primarily from work in a hospital affiliated with a technical school the practical and technical skills required for employment in their training specialty. We find these trainees not to be primarily students, but rather to be apprenticeship employees within the meaning of the Workmen's Compensation Act.
Though not considered in deciding this case, it appears from the record on appeal that plaintiff was covered under the Workmen's Compensation insurance policy issued to the defendant. The agreement between Holding Technical Institute and defendant hospital contained no provision requiring either party to effect workmen's compensation insurance; nor did it contain any indemnification provision to secure defendant against any loss or damage resulting from trainee injury.
226 S.E.2d at 226-27.
Walls did receive training as a student nurse, and this Court holds that the training received is sufficient to qualify as a "similar advantage received [by Walls] from the [Medical Center]" to qualify as a "wage" under the statutory definition. In return, Walls earned the training by performance of her assigned hospital duties for the hospital's pecuniary gain. Therefore, this Court concludes that the second test of consideration is met under the facts of this case.
Lastly, the determination that the hospital exerted control over the student nurse is apparent from Watts' testimony of the directions imposed by the hospital-employed nurses. Since the hospital offered no affirmative proof at trial, this Court finds no dispute of the claimant's testimony that control was exercised by the hospital in the manner in which the work was done and the result accomplished.
In conclusion, this Court holds that the attributes and legal consequences of an apprenticeship-employee are present here. Walls, as an apprentice, rendered services to the hospital with the primary purpose of learning the "business" of the hospital necessary to acquire her license as an LPN. For the services rendered by Walls, the hospital received payment from the public. Walls received a "similar advantage" (i.e., from the hospital giving rise to "wages" under a contract of hire as a matter of law). This Court holds, therefore, that the employer/apprenticeship-employee relationship as defined in the Mississippi statute has been met. This Court reverses the Commission and renders on this issue and remands the case for a determination of the other issues not addressed by the administrative law judge.
In light of our holding that Walls was an apprentice employee of the Medical Center, the case must now be remanded for a determination of her wage earning capacity. In making such a determination, the administrative law judge should consider the normal wages earned by an LPN or other hospital employee, who performs services similar in nature to those rendered by Carolyn Walls.
REVERSED AND RENDERED ON ISSUE OF EMPLOYMENT STATUS; REMANDED FOR FURTHER HEARING NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
*719 ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., dissent by separate written opinion.
ROY NOBLE LEE, Chief Justice, dissenting:
In my opinion, under the facts of this case, the compensation statute and decisions of the Mississippi Supreme Court, Carolyn Walls did not occupy the status of an employee of North Mississippi Medical Center, when she sustained a back injury, and I respectfully dissent from the majority opinion.
I do not agree with the majority that the facts of the case are uncontradicted and that only a question of law is for decision. I think that the decision of the Administrative Law Judge and the full Workers' Compensation Commission that Walls was not an employee of North Mississippi Medical Center is supported by substantial evidence and that the law, when applied to the facts as found by the Law Judge and Commission, disqualify her from workers' compensation benefits. I agree that there is a division in the authority of other jurisdictions on the question, but that division comes about largely by an interpretation of the statute of the jurisdiction by the appellate court of that jurisdiction.
Itawamba Junior College (IJC) has a one year nursing school, which includes classroom teaching and practical nursing. In this case, the practical nursing was received at North Mississippi Medical Center (hospital) at Tupelo, Mississippi. An instructor from IJC was in charge and present and gave the students guidance. IJC has no hospital of its own with which to provide and afford this practical training. It is dependent upon hospital institutions to provide the direction of the IJC nursing instruction. There are other nursing schools in the State of Mississippi provided by junior colleges (community colleges) and senior colleges, which could not exist without the assistance of hospitals to provide the facilities for practical training.
The college contracts with the hospital to provide the facilities, not the student. Here that procedure is indicated, although the contract between the junior college and the hospital is not a part of the record. It is conceded by all involved that there was no contract, written or oral, expressed or implied, between Walls and the hospital. There was a factual dispute as to the employee or apprentice status of Walls and the finding of the Commission, affirmed by the lower court was that no employee status existed. Substantial evidence supported the commission's finding.
Many high schools and colleges in this state operate, as a part of their curriculum, vo-tech training schools where work is performed in every conceivable area ranging from computers to welding, automobile repairs to all types of other repairs, and home economics work. Should these students become injured in such training, it is reasonable to be supposed that they will not be held to be employees of the school or educational department, which is providing practical training for the students. Practical training of nursing students cannot be provided in a vo-tech component of a school. It is reasonable to conclude that the hospital would rather not provide such facilities to the school but does so out of public cooperation with the school. Their benefits are nil, but, if the majority has its way, there will be nothing but liability to hospitals.
Overton v. Rochambeau School, 58 A.D.2d 694, 396 N.Y.S.2d 78 (1977) is factually similar to the case at bar and resulted in a finding that an individual was not an employee of the school. The claimant was a student trainee in the Manpower Development Program of the New York Department of Labor learning to operate a milling machine under instruction provided by employees of the Rochambeau School. While undergoing such training, he sustained injury, resulting in amputation of his left index finger. There was no evidence that he produced anything for or was employed by the school and the case was affirmed as to the noncompensability of the case. See also Beall v. Altus Public School District, 632 P.2d 400 (Okla. 1981) (supportive of the hospital's position); Denver Public Schools v. De Avila, 190 Colo. 184, 544 P.2d 627 (1976) (involving a practical nurse sponsored *720 through the Denver Public School District); Henderson v. Jennie Edmundson Hospital, 178 N.W.2d 429 (Iowa 1970) (Henderson was enrolled in a Nurses' Aide course).
I think that the Commission's decision was founded upon, and supported, by substantial evidence, and the well established law in this state requires that its decision of noncompensability be affirmed by the lower court and this Court. Therefore, I dissent.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] By mutual consent of the parties, assigned errors relating to wage earning capacity and injury arising out of or in the course of employment were not discussed in the briefs because each of those assigned errors hinges on whether the appellant was in fact an employee of the Medical Center.
[2] Our statute is similar in this regard to several other jurisdictions. See, e.g., Kinney v. State, 213 Conn. 54, 566 A.2d 670, 674 (1989); Tackett v. LaGrange Penitentiary, 524 S.W.2d 468, 468 (Ky.App. 1975); Sutton v. Ward, 92 N.C. App. 215, 374 S.E.2d 277, 279-80 (1988); Courchene v. Delaney Distributors, Inc., 421 N.W.2d 811, 812, fn. 2 (N.D. 1988); Durand v. City of Woonsocket, 537 A.2d 129, 130 (R.I. 1988); McCreery v. Covenant Presbyterian Church, 299 S.C. 218, 383 S.E.2d 264, 266-67 (1989).
[3] For a rather voluminous discussion of these and other related cases, see Hill v. King, 663 S.W.2d 435, 439-445 (Tenn. App. 1983). Hill involves a volunteer situation and is not applicable here.