**SALVATION ARMY d/b/a William Booth Hospital; St. Luke Hospital; Special Fund; and Suzanne Shively, Administrative Law Judge, Appellants,**

v.

**Shelley L. MATHEWS; and Workers' Compensation Board, Appellees.**

**No. 92–CA–000235–WC.**

Court of Appeals of Kentucky.

Feb. 12, 1993.

Christopher P. O'Bryan, O'Bryan & Brown, Louisville, for appellants Salvation Army d/b/a William Booth Hospital and St. Luke Hospital.

Peter J. Naake, Labor Cabinet, Louisville, for appellant Special Fund.

Steven R. Dowell, Newport, for appellee Shelley L. Mathews.

Before HUDDLESTON, McDONALD and WILHOIT, JJ.

HUDDLESTON, Judge.

The Salvation Army d/b/a William Booth Hospital (now St. Luke Hospital), Kentucky's Special Fund, and Administrative

Law Judge Suzanne Shively appeal from a decision of the Workers' Compensation Board reversing Judge Shively's order, and making workers' compensation benefits available to Shelley L. Mathews, a student trainee injured at William Booth Hospital. Because Kentucky's legislature has not provided workers' compensation coverage for unremunerated student trainees, we reverse the Board's decision, and remand for dismissal.

In January 1989, Mathews was a student enrolled in the William Booth School for Practical Nurses, Florence, Kentucky. The school offers a one-year program for licensed practical nurses who pay tuition for full-time study. The school requires its students to receive a certain amount of clinical training by assisting in some form of patient care in a hospital setting. William Booth Hospital and the nursing school reached an understanding whereby students could fulfil the training requirement at the hospital, if the students were always under the supervision of a teacher or person affiliated with the nursing school.

On January 26, 1989, Mathews slipped and fell while on the hospital premises, suffering a lumbar injury. She subsequently filed an Application for Adjustment of Claim seeking coverage as an employee of the hospital under Kentucky's Workers' Compensation Act.

William Booth Hospital responded by filing a special answer submitting that since Mathews was not and never had been its employee, her claim was barred. Mathews countered with a petition for interlocutory relief, seeking the payment of income benefits while her claim was pending. The hospital objected on essentially the same grounds outlined above, accenting that the William Booth School for Practical Nurses and William Booth Hospital were two wholly distinct, independent and separate entities.

The ALJ denied Mathews' petition for interlocutory relief, held the claim in abeyance, and ordered that Mathews show cause and submit proof within thirty days demonstrating why her claim should not be dismissed due to her not being an employee of the hospital at the time of her accident. Mathews responded with a memorandum arguing that she was an "apprentice" as described in KRS 342.640 (see *infra*).

Mathews conceded in her memorandum that there is no Kentucky case law directly addressing the issues evoked by her claim. She therefore cited extra-jurisdictional authority to support her apprenticeship theory. In reviewing this authority, the ALJ noted that in each case the employer health care facility, although paying no wages, provided a student trainee with some sort of payment in kind—lodging, food, free laundry service, etc. Since Mathews did not contend in the documents before the court that she received similar in-kind contributions from Booth Hospital, the ALJ allowed both parties an additional fifteen days to file affidavits or other evidentiary materials demonstrating the existence or nonexistence of in-kind contributions.

After the expiration of the fifteen days, the ALJ dismissed Mathews' claim on the ground that she was not an employee of the William Booth Hospital, and therefore not eligible to recover workers' compensation benefits from the hospital or the Special Fund pursuant to KRS Chapter 342. The ALJ noted that the only additional evidence submitted had come from one of the hospital's fiscal officers, who stated by affidavit that Mathews received no wages or in-kind payments from the hospital.

Mathews appealed to the Workers' Compensation Board. The Board examined thoroughly the North Carolina and New York cases cited by Mathews in support of her claim. The Board placed greatest emphasis, however, on a recent Mississippi Supreme Court decision, *Walls v. North Mississippi Medical Center & United States Fidelity & Guaranty Co.*, 568 So.2d 712 (Miss.1990).

In *Walls*, the Mississippi Supreme Court determined that a student nurse who received clinical training at a hospital was an apprenticeship employee of the hospital within the meaning of Mississippi's Workers' Compensation Act. The court concluded that the training the student nurse received in exchange for the services she

rendered to the hospital constituted a "wage" as defined in Mississippi's workers' compensation statute. This, coupled with the control that the hospital exercised over the nurse, made her eligible to receive workers' compensation benefits for an injury incurred during her clinical training. *Id.*, 568 So.2d at 716–718.

Evidently based solely on the foregoing authority, the Board ruled:

> We conclude, based on the Mississippi case, that lack of remuneration is not ipso facto conclusive of non-employee relationships for workers' compensation purposes. Other factors must also be present, including direction and control over the student nurse by the medical facility, as well as the injury occurring within the course of her employment/training as a nurse.

> \*   \*   \*   \*   \*   \*

> We conclude that remuneration, in-kind or otherwise, is not necessary to find that a student nurse is an employee for Workers' Compensation Act entitlement. Training alone is sufficient to meet the compensation or wage requirement under KRS 342.0011(17).

William Booth Hospital and the Special Fund now appeal the Board's decision.

KRS 342.640(1) defines in relevant part the "employees" covered by workers' compensation law:

> The following shall constitute employees subject to the provisions of this chapter ...:

> (1) Every person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer.

*Kentucky Farm and Power Equip. Dealers Assn., Inc. v. Fulkerson Bros., Inc.*, Ky., 631 S.W.2d 633, 635 (1982), describes the initial hurdle that must be cleared in stating a workers' compensation claim:

> The threshold requirement in a compensation claim is that the claimant must be an employee for hire. The essence of compensation protection is the restoration of a part of wages which are assumed to have existed. In this case, no compensation by the association existed (nor was any ever contemplated), and therefore, no benefits can be awarded.

■ We agree with the ALJ: "Since apprenticeship is joined with hire in [KRS 342.640], ... in a contract of apprenticeship, remuneration is an essential element if the apprentice is to be provided with compensation protection."

KRS 342.0011(17) defines "wages" as follows:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel *or similar advantages* received from the employer, and gratuities received in the course of employment from others than the employer as evidenced by the employee's federal and state tax returns. (Emphasis supplied.)

Mathews concedes that she did not receive a salary from William Booth Hospital, but now contends—pursuant to the Workers' Compensation Board's decision—that the training and supervision she received from the hospital was sufficient remuneration to bring her within the coverage of Kentucky's Workers' Compensation Act.

■ As a matter of axiom, the term *"similar* advantages" in KRS 342.0011(17) must have as its referent the preceding list of "advantages" set out in the statute: "Board, rent, housing, lodging, fuel." The Workers' Compensation Board has ruled that "training" and "control" are remunerative advantages similar to those described in KRS 342.0011(17).

■ We are mindful of the Mississippi Supreme Court's *Walls* decision discussed above, and are aware that Mississippi's Workers' Compensation Act is similar to our own. Nevertheless, we see nothing in KRS 342.640 or KRS 342.0011(17) that would lead us to conclude that the *Kentucky* legislature has intended to provide

workers' compensation coverage for a student visiting a trade, business or professional setting, who receives no remuneration other than training and control, and is not retained in an apprenticeship capacity by that entity.[1] We are satisfied that "training" and "control" are sufficiently dissimilar from the advantages set out in KRS 342.0011(17) as to remove individuals receiving such aid from the definition of a compensable employee or apprentice as defined in our statute, and accompanying case law (see *Fulkerson, supra*). This reality is demonstrated not least of all by the fact that the advantages set out in KRS 342.0011(17) are all sufficiently palpable as to be *taxable* advantages, while "training" and "control" are manifestly not taxable advantages. We note again the language of KRS 342.0011(17):

> [B]oard, rent, housing, lodging, fuel or similar advantages received from the employer, and gratuities received in the course of employment from others than the employer as evidenced by the employee's federal and state tax returns.

Training and control are therefore not, we conclude, the kind of palpably remunerative advantages envisioned by our legislature when passing the statute.

 We hold that the Workers' Compensation Board clearly erred in expanding Kentucky workers' compensation coverage to include unremunerated student trainees. The legislature has not made workers' compensation benefits available to these trainees; it is therefore not the prerogative of the judiciary to do so. Our decision, of course, does nothing to diminish any possibility for civil recovery that Mathews or other trainees might pursue under various tort theories.

The Workers' Compensation Board's decision is reversed, and this matter is remanded for dismissal.

McDONALD, J., concurs.

WILHOIT, J., concurs in result.

---

1. *Black's Law Dictionary* 101 (6th ed. 1990) defines an "apprentice" as follows: "An apprentice is a person who agrees to work for an employer for a specified time for the purpose of learning the craft, trade or profession in which the employer agrees to instruct him.... The requirements of an apprenticeship contract both as to contents and manner of execution are prescribed by statute in a number of states." The record reflects the establishment of no express or implied apprenticeship contract between William Booth Hospital and Mathews. Indeed, the only discernible agreement was between the hospital and the nursing school. Since Mathews was unremunerated, however, any apprenticeship argument she might make is irrelevant for purposes of workers' compensation recovery.