BARNES, J.,
for the Court:
¶ 1. Kevin Collins, a job applicant with Averitt Express Inc. (Averitt), injured his knee while performing a pre-employment job-function test during the hiring/orientation process. He filed a workers’ compensation claim, but Averitt argued that Collins was not an employee and, therefore, not entitled to benefits.
¶ 2. An administrative judge (AJ) with the Mississippi Workers’ Compensation Commission ruled that.Collins was entitled to benefits. Averitt filed an appeal with the full Commission, which affirmed the ruling. Averitt now appeals that ruling. We find no error and affirm the judgment granting Collins workers’ compensation benefits for his injury.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 3. Collins applied for a position as a truck driver with Averitt. On November 2, 2012, Averitt sent Collins a letter, informing him of the dates of his scheduled orientation. The letter further stated: “Your job offer is contingent upon your passing your physical, drug screen and road test.” Collins’s road test was scheduled for Sunday, November 4, 2012, one *1255 day prior to the commencement of orientation. It was administered at Averitt’s Cookeville, Tennessee facility by fleet manager Danny Smith. The road test consists of two phases: (1) the actual driving portion, which requires an applicant to demonstrate his driving proficiency and skill in the operation of a tractor-trailer vehicle; and (2) a job-function test, which requires an applicant physically to enter and exit the rear of a trailer in a specific manner. Collins was unable to perform the requirements of the job-function test, so he failed that portion of the road test.
¶ 4. When Collins reported for orientation the next morning, Averitt informed him that it was rescinding the job offer due 'to his failure to pass the requirements of the road test. Collins explained that he had injured his knee attempting to enter and exit the trailer during the job function test. Averitt paid Collins a per diem of $75 for attending the first day of orientation, even though he did not attend the actual session, and mileage ($288.68). Av-eritt also referred Collins to an independent medical provider for his alleged injury. Collins, who paid for the medical treatment, was diagnosed with a torn lateral meniscus.
¶ 5. On December 3, 2012, Collins filed a petition to controvert with the Commission, requesting workers’ compensation benefits, as he claimed he was injured while an employee of Averitt. In its response, Averitt denied an employer/employee relationship existed at the time of the injury. An “Emergency Motion to Compel Medical Treatment and Temporary Total Disability Benefits” was filed on March 3, 2013.
¶ 6. On January 14, 2014, an AJ ruled that Collins was an Averitt employee under an “implied contract of hire” when his injury occurred; therefore, he was entitled to benefits. Averitt appealed the AJ’s findings to the full Commission, which affirmed the ruling.
¶ 7. On appeal, we affirm the Commission’s decision.
DISCUSSION
¶ 8. Our review of workers’ compensation cases “is limited to determining whether the Commission’s decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated the claimant’s constitutional or statutory rights.” Pulliam v. Miss. State Hudspeth Reg’l Ctr., 147 So.3d 864, 868 (¶ 16) (Miss.Ct.App.2014) (quoting Gregg v. Natchez Trace Elec. Power Ass’n, 64 So.3d 473, 475 (¶ 8) (Miss.2011)). Our appellate courts will only reverse the Commission’s order in instances “where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Cook v. Neshoba Cnty. Gen. Hosp., 139 So.3d 131, 133 (¶9) (Miss.Ct.App.2014) (quoting Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010)).
¶ 9. The sole issue on appeal is whether “an implied contract of hire” existed between Averitt and Collins, a job applicant, that entitled Collins to workers’ compensation benefits as an “employee.” Subject to certain exceptions, Mississippi Code Annotated section 71 — 3—3(d) (Rev. 2011) defines an “employee” as “any person ... in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied[.]” “The question of whether a person is an employee may be one of fact, of mixed law and fact, or of law only.” Walls v. N. Miss. Med. Ctr., 568 So.2d 712, 714 (Miss.1990) (quoting Barragan v. W.C.A.B., 195 Cal.App.3d 637, 642, 240 Cal.Rptr. 811, 814-15 (1987)). If there is no factual dispute, “the question is one of law, and the Court may independently review those *1256 facts to determine the correct answer.” Id. Here, there is no dispute as to the actual facts. The parties merely dispute their application under the relevant law.
¶ 10. “The elements of a contract for hire are mutual consent, consideration, and right of control, though they are not rigidly applied in workers’ compensation cases.” Mathis v. Jackson Cnty. Bd. of Supervisors, 916 So.2d 564, 569 (¶ 12) (Miss.Ct.App.2005) (citing Walls, 568 So.2d at 715). In the order granting Collins workers’ compensation benefits, the AJ found:
The evidence indicated that Averitt extended an implied contract of hire by the actions of its employees. Collins applied for employment with Averitt, so he obviously wanted to work there. Av-eritt sent Collins the letter requesting his attendance at the corporate office. Averitt had the right of control over Collins’[s] actions while he was at the corporate office undergoing the physical, orientation, road test, etc. Further, the Averitt employees instructed Collins on how to perform the road test, when to attend the physical, where to report for orientation, etc. Collins was compensated for attending and participating in the orientation.
Thus, the AJ concluded that the elements of an employment contract were present, and Collins was an “employee,” as defined by section 71 — 3—3(d), when his injury occurred.
A. Mutual Consent
¶ 11. Averitt argues there was “no mutual consent by the parties to any contract for hire.” Mutual consent is defined as a “meeting of the minds of both parties to a contract; the fact that each agrees to all the terms and conditions, in the same sense and with the same meaning as the others.” Mathis, 916 So.2d at 569 (¶ 13). Collins applied for a truck-driver position with Averitt. Crucial to both the AJ’s and the Commission’s findings was the letter Averitt sent to Collins, providing him with the details of its hiring and orientation process. Although the letter expressed that the job offer was contingent on Collins’s ability to pass the road test, it also stated:
Welcome to Averitt Express! We are proud to have you as a member of our team and look forward to meeting you in orientation at our Corporate Office in Cookeville, TN. During orientation, we will share with you our vision, our strategy and the exciting benefits of being an Averitt Express associate. It’s a great opportunity to learn as much as you can about your new company.
Collins immediately drove to Averitt’s corporate facility to participate in the orientation and training program. Although Averitt claims that allowing Collins to participate in the road test was simply “providing Collins with an opportunity to interview for a driving position,” we find the evidence indicates otherwise. The letter welcomed Collins to the company and classifies him as a “member of [its] team.” The letter also informed Collins that the failure to complete the requirements of the road test would “result in Averitt rescinding [his] job offer.” (Emphasis added).[1] This language would indicate that Collins was not taking the pre-employment road test merely to be considered for hire, but rather that Averitt had every intention of hiring him had he passed the road-test requirements.
¶ 12. Accordingly, we find the evidence was sufficient to show mutual consent for hire existed between the parties.
*1257 B. Consideration
¶ 13. “Consideration is ‘(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise.’ ” Mathis, 916 So.2d at 569 (¶ 15) (quoting Marshall Durbin Food Corp. v. Baker, 909 So.2d 1267, 1273 (¶ 14) (Miss.Ct.App.2005)). “All that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the prom-isee.” Theobald v. Nosser, 752 So.2d 1036, 1040 (¶ 15) (Miss.1999).
¶ 14. Although Collins was never on Averitt’s payroll, he was compensated for attending the first day of orientation and for his mileage. Averitt also paid for Collins’s hotel room while he was attending orientation. “The fact that the claimant received travel pay or transportation expenses for the journey to the point where the claimant had been led to expect formal hiring is strong evidence that sufficient employment relation already existed.” 3 Larson’s Workers’ Compensation Law § 26.02(4) (2000).
¶ 15. Averitt acknowledges that Collins received compensation for his expenses, but it argues there is no consideration because his “activities in participating in the road test in no way benefitted Averitt.” We disagree and find that submitting Collins to the road test, in order to test his ability to perform the job requirements, benefitted Averitt. In Dodson v. Workers’ Compensation Division, 210 W.Va. 636, 558 S.E.2d 635, 645 (2001), the Supreme Court of Appeals for West Virginia held that an applicant was an employee for purposes of workers’ compensation benefits, despite the lack of compensation provided, because “[t]he [pre-employment] test benefitted and assisted [the employer] in carrying on its business by defining and testing a minimum level of strength and agility which [the employer] considered essential to the performance of the duties by such [employees].” Here, the road test benefitted Averitt in its business of hiring truck drivers, by testing the applicant’s ability to perform the job’s tasks. In exchange for his travel expenses and orientation pay, Collins agreed to participate in the hiring process and orientation program and to become a driver for Averitt.
¶ 16. Consequently, we find there was sufficient consideration to support a contract for hire.
C. Right of Control
¶ 17. Averitt claims that it-“had no right to control Collins’s physical conduct in the performance of any duties as he was not an employee and had not been assigned any duties.” However, as we noted in Mathis:
The right of control, rather than the fact that an employer exercises that control, determines the status of parties as employer and employee for compensation purposes. Wade v. Traxler [Gravel Co.], 232 Miss. 592, 100 So.2d 103 (1958). One may establish the right of control by demonstrating that a potential employer provided equipment and had the right to fire a potential employee. Boyd v. Crosby Lumber & Mfg. Co., 166 So.2d 106[, 108] (1964). Where one issues directions and instructions, that is evidence of one’s right of control. Walls, 568 So.2d at 718.
Mathis, 916 So.2d at 570 (¶ 19).
¶ 18. The facts do not support Averitt’s argument. Averitt clearly controlled the road-test environment, and its fleet manager instructed Collins on how to exit/enter the vehicle when performing the test. The test was performed at Averitt’s Cookeville, Tennessee facility. Collins injured himself attempting to comply with *1258 Averitt’s instructions while at its facility. Furthermore, the letter instructed orientation attendees regarding the company’s dress code and grooming requirements. Averitt also retained the right to dismiss Collins for his failure to meet the requirements of the road test.
¶ 19. Consequently, we find that Aver-itt, as an employer, had right of control over Collins’s actions in performing the test.
CONCLUSION
¶ 20. As noted in the AJ’s order granting benefits:
[Compensation protection does not need to wait for the completion of paper formalities, once the claimant has achieved sufficient connection with the employment to bring him within the orbit of the risks of that employment. It is enough, for example, that he has been told to report for work, since for all practical purposes, the exigencies of the employment begin to operate from that moment.
(Quoting 3 Larson’s Workers’ Compensation Law § 26.02(3) (2000)). Under the distinct facts of this case, there was substantial evidence to support the Commission’s determination that Collins was an Averitt employee at the time of his injury, under an implied contract for hire, and that he was entitled to benefits. Accordingly, we. affirm.
¶ 21. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.

. The term "rescind” is defined as follows: "To abrogate or cancel (a contract) unilaterally or by agreement.” Black’s Law Dictionary, 1332 (8th ed.2004).